SWAIN, J.
 

 Defendant was found guilty by a jury of one count of violation of section 41.08 of the Los Angeles Municipal Code (procuring) after trial on a four-count complaint. Count IV of the complaint alleges that the defendant did willfully and unlawfully cause, procure, induce, persuade and encourage another person to patronize prostitutes and houses of prostitution, direct and conduct another person to a prostitute, etc. She appeals from the order granting probation (mistakenly denominated the judgment of conviction), contending that the court erred in refusing to instruct the jury as to the defense of entrapment. We agree.
 

 As held in
 
 People
 
 v.
 
 Lindsey
 
 (1949), 91 Cal.App.2d 914, 916-917 [205 P.2d 1114] : “Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. Persuasion or allurement must be used to entrap. [Citation.] The officer must induce the defendant to commit a crime which he would not have committed without such inducement. [Citation.] It is not the entrapping of a criminal that the law frowns upon but the seduction of innocent persons into a criminal career by its officers. [Citation.]” As the court said in
 
 People
 
 v.
 
 Alamillo
 
 (1952), 113 Cal.App.2d
 
 *925
 
 617, 620 [248 P.2d 421] : if there was any evidence deserving of any consideration whatever, upon the issue of entrapment, the court should have instructed the jury upon the doctrine applicable to that issue.” In the instant matter, a vice squad officer testified substantially as follows: A bartender handed him a business card, and posing as a college student, he thereupon went directly to the motel managed by defendant. The officer told defendant: “Jess sent me.” Defendant replied, “Do you want a room?” He answered: “I am alone.” Defendant then said: “Oh, you want a girl?” He replied: “I guess so.” Then defendant made two telephone calls and told him that the two prostitutes she had contacted were unavailable. This incident was the subject of Count I. The officer testified to a similar occurrence on the occasion which was the subject of Count II. On the occasion which was the subject of Count III, defendant gave him a business card with the names “Anne” and “Kay” and “Flower Motel” written thereon, and sent him to the Flower Motel, where he was unable to locate a girl. As to Count IY, on which defendant was convicted, the officer testified that he went to the Flower Motel, located Kay, established the elements of a prostitution charge, arrested her, and then returned to defendant’s motel, where defendant told him Kay had been arrested but that she knew of another prostitute in a bar. These four incidents took place over a period of five weeks. However, according to defendant’s testimony, it- was the officer, not defendant, who first broached the subject of obtaining a girl for immoral purposes. She testified that he came to her motel about 10 times during a two-month period, importuning her each time to find a girl for him. She repeatedly told him that she didn’t have any girls and to stop bothering her. After the officer had come back seven or eight times, defendant sent him to see Kay at the Flower Motel, “thinking maybe she could help him; that I didn’t know anybody . . . I wanted to get rid of him.”
 

 In the light of this evidence, it was clearly erroneous for the court to refuse to instruct the jury as to the defense of entrapment. Whether or not defendant’s story was true is beside the point. Her testimony tended to show that the procuring scheme originated with the officer, that she resisted constant pressure from the officer for over a month to procure a prostitute for him, and that she yielded to the officer’s
 
 *926
 
 insistence only in an effort to get rid of him. This- if believed by the jury, would constitute a defense to the charge, and defendant was entitled to have that defense presented to the jury under proper instructions.
 
 (Peoples. Gallagher
 
 (1930), 107 Cal.App. 425 [290 P. 504];
 
 People
 
 v.
 
 Reed
 
 (1954), 128 Cal.App.2d 499 [275 P.2d 633].)
 

 Not only did the trial court fail to give the requested instruction on entrapment, which the evidence plainly warranted, but it made this statement to the jury: “The defendant in this case, having denied any of the acts, doing of any of the acts alleged in Count . . . IV, has no valid defense as to entrapment and I will not define the law of entrapment for you because it is not applicable.” The law is not as declared by the trial court. A defendant may present inconsistent defenses (see discussion in
 
 People
 
 v.
 
 Keel
 
 (1928), 91 Cal.App. 599, 604-606 [267 P. 161]; and
 
 People
 
 v.
 
 Reese
 
 (1944), 65 Cal.App.2d 329, 338-341 [150 P.2d 571, 576-577]). We find nothing in any of the cases cited or read, which raises a doubt in our minds that a defendant who, as a witness- denies some essential elements of an offense charged, may nevertheless have the benefit of evidence that she was entrapped into committing the offense.
 

 The order granting probation is reversed, and the cause remanded for a new trial. The appeals from all other matters are dismissed.
 

 Bishop, P. J., and Patrosso, J., concurred.
 

 A petition for a rehearing was denied February 8, 1956 (Bishop, P. J., Patrosso, J., and Swain, J.), and the following opinion was then rendered:
 

 THE COURT.
 

 In an endeavor to safeguard against a misinterpretation of our opinion, we add that we are not holding that entrapment was established as a matter of law, but only that it was sufficiently proven to require that the question—Was the defendant entrapped?—should have been submitted to the jury under proper instructions.
 

 Where a ground of appeal is that the jury had not been adequately informed relative to a defense, appellant’s contention is not answered by pointing to evidence that tended to disprove the defense. With respect to the evidence, the question is: Was it sufficient to go to the jury?