[Crim. No. 5871.   Second Dist., Div. Three.   Oct. 25, 1957.]

THE PEOPLE, Respondent, v. ALBERT HERMAN AL-
VAREZ et al., Defendants; DOLORES K. PADILLA,
Appellant.

Nathan Kline for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry
Johnson, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants Albert H. Alvarez and
Dolores K. Padilla were charged with violation of section
11500 of the Health and Safety Code in that they unlawfully
sold heroin. In a jury trial they were convicted. Padilla
appeals from the judgment and the order denying her motion
for a new trial.

On June 15, 1956, about 3 p.m., while Deputy Sheriff
Valesquez and a confidential informer were on a motorcycle
on their way to Laguna Park in Los Angeles, the informer

said he (informer) could purchase narcotics from Alvarez whom he expected to see at the park. The deputy was wearing plain clothes (not a uniform). As they were walking into the park, the deputy saw defendants Alvarez and Padilla sitting, next to each other, on the grass in the park. Then the deputy saw Padilla get up, walk about 30 feet, and meet an unidentified Mexican woman. At the time of that meeting, the deputy was about 40 or 45 feet from them. He saw Padilla take a finger stall from her bosom, and then hand some capsules to the woman. The finger stall was about an inch and a half long and about half an inch wide. Green bills, which appeared to be money, passed between Padilla and the woman. Then the woman left the park, entered an automobile and went away. Then the informer went to Alvarez and had a conversation with him. At the time of that meeting, the deputy was about 30 feet from them. After that conversation Alvarez went to the place where Padilla was standing (the place where Padilla met the Mexican woman); and the informer returned to the deputy. The deputy saw Padilla "hand some capsules out of that same finger stall" to Alvarez, and Alvarez put them in a cellophane package. At that time the deputy was about 45 or 50 feet from them. Then Alvarez came to the place where the informer and the deputy were standing. Alvarez directed the deputy to give the money to the informer. Then the deputy handed a $10 bill to the informer. The informer gave that bill and another $10 bill to Alvarez. (The deputy had previously given the other $10 bill to the informer.) After Alvarez received the two bills he dropped the cellophane package on the ground, and then he returned to Padilla. The deputy recovered the package (Exhibit 1) which contained 10 capsules of powder. Then he left the park and met his surveillant officers and displayed the package.

(The surveillant officers were Deputy Sheriffs Cook and Fayne, who were in a parked automobile, which was about 150 feet from the place where the defendants were. According to the testimony of Deputy Cook, he observed the defendants, Deputy Valesquez, and the informer by using binoculars.)

Deputy Cook testified substantially the same as Deputy Valesquez had testified with reference to the actions of Alvarez, Padilla and the informer, except that Deputy Cook said he observed Padilla "reach down in her bosom and appear to remove a small object, which I could not definitely see."

The cellophane package (Exhibit 1) contained heroin.

Defendant Padilla testified that in June, 1956, she did not give heroin capsules to a Mexican woman in Laguna Park; that in June, 1956, in Laguna Park or any other place, she did not give heroin capsules to Alvarez to give to anyone else; that she had been convicted of forgery, a felony.

Defendant Alvarez did not testify.

The attorney for defendant Alvarez asked Deputy Valesquez the following question: "What is the name of the informer, Officer?" The deputy district attorney said: "I object under Section 1881, subdivision 5——." The judge said: "Objection sustained." It will be assumed that the deputy district attorney intended to make the objection under the provisions of section 1881, subdivision 5, of the Code of Civil Procedure. That subdivision is as follows: "A public officer can not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

Appellant (Padilla) contends that the evidence was insufficient to support the judgment against her. She argues that certain testimony of Deputy Valesquez was inherently improbable. The testimony, so referred to, was that when he was about 45 or 50 feet from her he saw her take capsules from a finger stall and hand them to Alvarez. Appellant also contends that the court erred prejudicially in sustaining the objection to the question wherein the officer was asked the name of the informer. This last contention will be considered first.

In the present case the person referred to as an informer was more than a mere informer. He actively participated in the performance of the acts which allegedly constituted the offense charged. He went to defendant Alvarez and had a conversation with him, and immediately thereafter he returned to Deputy Valesquez. Then Alvarez went to Padilla and received something from her. Immediately thereafter Alvarez went to the informer and Deputy Valesquez and told the deputy to give the money to the informer. Thereupon the informer gave money to Alvarez, and then Alvarez dropped the heroin. It thus appears that the informer delivered the purchase money to Alvarez for the purpose of paying for the heroin, and that the informer was the purchaser of the heroin.

The court erred prejudicially in not requiring the officer to disclose the name of the informer. (See *Roviaro* v. *United*

*States,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639] ; *Portomene* v. *United States,* 221 F.2d 582; *Sorrentino* v. *United States,* 163 F.2d 627; *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821].)

In *People* v. *Lawrence, supra,* it was said at page 452: "When an informant becomes a participant in the crime charged against the defendant, he and the People lose the right to keep his identity anonymous."

In *Portomene* v. *United States, supra,* 221 F.2d 582, it was said at pages 583 and 584: "In *Sorrentino* v. *United States,* 9 Cir., 163 F.2d 627, the court pointed out the distinction between the case where the person called an informer is that and nothing more, in which case the defendant would not have been entitled to have his identity disclosed, and a case such as this one, where the informer is the person to whom the defendant is said to have sold and dispensed the opium described in the indictment. In such a case information as to this person's identity was material to the defense, and the denial of the requested information was error."

In *Roviaro* v. *United States, supra,* 1 L.Ed.2d 639, the United States Supreme Court said at pages 641 and 642: "The principal issue is whether the United States District Court committed reversible error when it allowed the Government to refuse to disclose the identity of an undercover employee who had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged. For the reasons hereafter stated, we hold that, under the circumstances here present, this was reversible error."

In the Roviaro case, Roviaro was charged in Count I with unlawfully selling heroin to John Doe, and in Count II with fraudulently facilitating the transportation of heroin. In that case four officers met at a certain place with an informer (John Doe) and, after one of the officers had secreted himself in the trunk of the informer's automobile, the informer drove the automobile to a second place. The other three officers, who were in two automobiles, followed the informer to the second place. Roviaro arrived at that place and, after entering the informer's automobile, he and the informer proceeded in that automobile to a third place. One of the officers, who was alone in one of the trailing automobiles, stopped about 100 feet from that place. That officer

saw Roviaro alight from the informer's automobile and go to a tree, pick up a package, return to the informer's automobile, make a motion as if depositing the package in the automobile, and then walk away. Then that officer went to the informer's automobile, recovered a package (of heroin) therefrom, and then the officer walked down the street and saw Roviaro enter another automobile and ride away. In that case Roviaro made a motion, prior to the trial, requesting the name of "John Doe." The prosecution objected upon the ground that John Doe was an informer and that his identity was privileged. The trial court denied the motion.

In the Roviaro case the court said at page 645: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." It was also said therein at pages 645 and 646: "Three recent cases in the Courts of Appeals have involved the identical problem raised here—the Government's right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence. *Portomene* v. *United States* (CA5th Fla.) 221 F.2d 582; *United States* v. *Conforti* (CA7th Ill.) 200 F.2d 365; *Sorrentino* v. *United States* (CA9th Cal.) 163 F.2d 627. In each case it was stated that the identity of such an informer must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense. We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

It was said further in the Roviaro case, at page 647: "The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. . . . Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson [who was in the automobile trunk] and Federal Narcotics Agent Durham [who trailed the informer's automobile] was hardly a substi-

tute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe [informer] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package.''

It was said further therein at page 647: ''This is a case where the Government's informer was the sole participant, together with the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses.''

█ In the present case a further matter, not referred to in the briefs, will be considered. The question as to the name of the informer was asked by the attorney for defendant Alvarez. It was not necessary, however, that such question be asked also by appellant in order for her to present the point on appeal. The defendants were charged jointly with the sale and they were tried together. The rules as to admissibility of evidence, under the charge and circumstances here, were the same with reference to both defendants. It is apparent that the judge, in sustaining the objection to the question as to the name of the informer, was ruling that the officer would not be required in the trial to disclose the name of the informer.

In view of the above conclusion that the trial court erred prejudicially in not requiring the officer to disclose the name of the informer, it is not necessary to discuss the other contention relative to the insufficiency of the evidence.

The judgment and the order denying the motion for a new trial are reversed, and the cause is remanded for a new trial.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1957. Shenk, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.