[Crim. No. 6074.   Second Dist., Div. One.   Dec. 30, 1957.]

THE PEOPLE, Respondent, v. CLYDE COX, Appellant.

[Two Cases.]

---

*Assigned by Chairman of Judicial Council.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from two judgments wherein the defendant, in each instance, was convicted of selling heroin.

In an indictment, Superior Court Number 190827, in Los Angeles County, hereinafter referred to as the first case, the defendant was charged with violating the provisions of section 11500, Health and Safety Code, in that he did on February 11, 1957, sell, furnish and give away a preparation of heroin. In another indictment, Superior Court Number 190828, in Los Angeles County, hereinafter referred to as the second case, the defendant was charged with violating the provisions of section 11500, Health and Safety Code, in that he did, on February 14, 1957, sell, furnish and give away a preparation of heroin. In each indictment prior convictions were alleged as follows: (1) grand larceny and receiving stolen property in 1926 (Ohio), and served a term in prison there-

for; (2) assault to rob in 1933 (Ohio), and served a term in prison therefor; (3) counterfeiting (United States District Court) in 1938 (Maryland), and served a term in prison therefor; (4) robbery in 1942 (Virginia), and served a term in prison therefor, and (5) grand theft in 1949 (California), and served a term in prison therefor.

The defendant pleaded not guilty to each indictment and denied the prior convictions. The two indictments were then consolidated for trial without objection by the defendant, and for the sake of convenience the first case was referred to as count I, and the second case was referred to as count II. On June 25, 1957, in Department 45 of the Superior Court, Judge Odemar presiding, the defendant's counsel announced, in the presence of the defendant, that the defendant desired to withdraw his plea of not guilty as to count I, and to enter a plea of guilty thereto. The defendant was then questioned and stated that it was his wish to withdraw the plea of not guilty theretofore entered, and to enter a plea of guilty to count I; *that he was doing so freely and voluntarily*; that no one had promised him anything either by way of lesser sentence, probation or any kind of immunity; *that he was doing so because he believed himself in fact to be guilty, and that he did plead guilty to the sale of heroin as alleged* in case Number 190827, the first case. Counsel for the defendant then made an application for probation, although apparently knowing full well that the defendant was ineligible therefor. The district attorney referred to the prior convictions, and in each instance the defendant and his counsel stated that they wanted the matter determined by the court, without a jury, at the time of the probationary hearing and sentence, and stipulated accordingly. Documents were then introduced into evidence with reference to the prior convictions.

At the time set for sentencing, Judge Odemar inquired of the defendant, "In this matter you entered a plea of guilty. Did you tell the Probation Officer you are not guilty and that you entered a plea of guilty because your attorney made you do it; is that right?" The following then took place:

"DEFENDANT COX: Because he instructed me to.

"THE COURT: Instructed you to. *I am going to set the plea aside and remand you to the custody of the Sheriff without bail and sentence you to trial. You cannot be instructed to plead.* You are going to have this and all other cases tried. I cannot sentence you. I do not believe Mr. Marshall in-

structed you to. I am not going to get that kind of argument. I am not going to sentence you when you tell me he told you to plead guilty because I do not believe he did.''

It is not at all clear that in using the phraseology ''he instructed me to,'' that the defendant meant that he was compelled to plead guilty—rather, it could well have been that the defendant meant by ''instructed'' that his attorney had advised him to plead guilty. The defendant was not a novice in court proceedings for at least on five previous occasions he had been in court and been convicted of felonies and sent to prison.

Counsel for the defendant then stated that he wanted to make a motion upon a separate ground to set aside the plea of guilty, namely that since the plea of guilty he had read *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821], which was published in the advance sheets of April 12, 1957, and that now the defendant had a defense which he felt at the time of plea he did not have. The court, without further inquiry, then said:

''Well, the Court is sending this back on the Court's own motion because he stands here and pleads guilty and he tells us he pleaded guilty because he was in fact guilty and knew he was and nobody made any promises or anything; then turns around and tells the Probation Officer no, that his attorney told him to, otherwise he wouldn't and he wasn't. So, on that ground I am not only going to change this; I am not only going to send this over there, but I am going to— this is 190827, 190828 and 190764—all three of the matters having to do with narcotics are transferred to Department 41 and set for August 1st. That is next Thursday in Department 41 at 9:00 o'clock, for setting.

''Defendant's plea of not guilty in 190827 may be entered in his behalf. He will have to go through with all of them. I am not going to sentence a man with this kind of stuff who says he is not guilty after he pleaded guilty.''

The defendant was then remanded without bail.

On August 14, 1957, the causes came on for trial before Judge Ambrose, in Department 42.

A résumé of the facts as developed in the trial is as follows: ▋ First Case: At about 8:10 o'clock p. m., on February 11, 1957, Richard Renty, a Los Angeles police officer assigned to the narcotics division of the police department as an undercover agent, went with an informer to the Avondale Hotel in Los Angeles. As Renty and the informer approached the

hotel, and while upon the steps thereof, defendant Cox came out of a door. The informer spoke to Cox and asked him if they could see him. The defendant answered yes, and said to go on up. Renty and the informer walked into the hotel and up the stairs to room number 15, where George Douglas was shaving. Cox followed Renty and the informer up the stairs and was standing in the doorway when Renty handed the informer $10, and the informer then gave the $10 to Douglas. The informer asked Douglas "if this was his stuff." Cox said, "Yes, it is all the same." Douglas handed the informer a balloon, who in turn handed it to Renty. The informer asked Cox if he would recognize Renty if he, Cox, saw Renty again, and Cox answered that he would, The balloon contained heroin.

As to the second case, at about 7:20 o'clock p. m., on February 14, 1957, Renty, working as an undercover agent, returned to the Avondale Hotel alone. He walked into the lobby and saw Cox and another man looking at a television program. Renty asked for Cox and the defendant got up and walked out, and Renty inquired if he could see him, to which Cox replied, "Yes, follow me." They went down a hallway and the defendant indicated that he did not remember Renty, and Renty explained that he had been there a couple of days before, and that he now wanted "a ten-dollar paper—a ten-dollar balloon." Cox said to wait a minute, and then went up the stairs. When Cox returned Renty handed him $10, and Cox handed Renty a red-colored balloon. Renty then left. The balloon contained heroin.

On cross-examination of Renty, defendant's counsel, after stating that the informer knew Cox, sought to ascertain the name of the informer. The court pointed out that the defendant Cox already knew who the informer was, and the giving of his name would accomplish nothing of importance. In other words, as the court indicated, at that stage of the case the correct name would not help the defendant and would not help the state, but the disclosure of the name would be of great assistance to others who were engaged in the illicit narcotic traffic, to the detriment of the public at large. Counsel for the defendant admitted that he had made no effort to locate the informer, or to ascertain his name, although he was put on notice by a transcript of the grand jury proceedings that there was such a person. The objection of the district attorney to the question as to the name of the informer was then sustained.

The defendant then took the witness stand and testified that he never saw Renty before the trial; that he was not at the Avondale Hotel on the nights of February 11 and February 14, nor was he present at the sale of any narcotics. On cross-examination, he was asked why he had pleaded guilty before if he were not guilty, and the defendant answered: "I was *instructed. I was not familiar with the courts and I was instructed to plead guilty,*" and then went on to say that he had not understood when he pleaded guilty before, that he *"was only trying to save the court."* (Emphasis added.) This, from a person who started serving terms in the penitentiary in 1926, and continued in and out of prisons for more than 30 years, and who had now been caught selling heroin.

Appellant contends (1) that the court erred in sustaining the objection to the question to Renty as to the name of the informer, and (2) that the error in the first case prejudicially tainted the second case, and therefore the conviction on both charges should be reversed.

■ The attorney general, with commendable frankness, concedes that in the light of *People* v. *Lawrence, supra,* 149 Cal.App.2d 435, *People* v. *Castiel,* 153 Cal.App.2d 653 [315 P.2d 79], and *People* v. *Alvarez* (2d Crim. 5871, October 25, 1957), 154 Cal.App.2d 694 [316 P.2d 1006], wherein the general rule is announced that even where an offense is committed in the immediate presence of an officer of the law, if an informant has in any way participated in the criminal activity, or if the informer was a material witness to the alleged crime, then, in such an event, the name of the informer must be made known upon demand of the person charged, and that therefore, the first case herein must be reversed.

■ We have an anomalous situation—a defendant on one occasion frankly and openly admitting in open court his complete guilt—that he sold the heroin in the first case; and then by virtue of what has heretofore been set forth, being permitted to take advantage of a court-sanctioned doctrine in order that he might tell a series of untruths and thereby secure a reversal.

■ As to the second contention, we find no merit therein. In *People* v. *Tarantino,* 45 Cal.2d 590, at page 597 [290 P.2d 505], it is said, ". . . It is to be presumed that the [trier of fact] . . . was not influenced to return a guilty verdict as to Count 2 upon evidence other than that pertinent to this count."

The two charges were completely separate, distinct and

different, and occurred on different days. In the second case, the officer made the purchase and no informer was involved in the transaction, unless it can be said that the officer would not have been able to make the purchase but for the informer's introduction two nights before. We are not willing to make any such interpretation and thereby add to the comfort of narcotic peddlers. As the attorney general has appropriately said, ''. . . though appellant may be allowed to escape his just deserts as to Count 1, he should not be permitted to thereby, and in addition, thwart justice collaterally as to Count 2.''

The judgment is reversed as to the Superior Court case Number 190827.

The judgment is affirmed as to the Superior Court case Number 190828.

White, P. J., and Drapeau, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.