[Crim. No. 6072. Second Dist., Div. Two. May 16, 1958.]

THE PEOPLE, Respondent, v. SAM GARZA, Appellant.

Floyd H. Schenk for Appellant.

Edmund G. Brown, Attorney General, and Ray R. Goldie, Deputy Attorney General, for Respondent.

ASHBURN, J.—Convicted of three charges of selling a preparation of heroin (Health & Saf. Code, § 11500) defendant appeals from the judgment.

Appellant claims insufficiency of the evidence but his brief does not comply with the rule pertaining to the presentation of that argument. (Rules on Appeal, rule 15.) However, our consideration of appellant's major contention requires an examination of the evidence and we find it to be amply sufficient.

At the times here pertinent defendant operated the San Antonio Café in the city of Los Angeles. On April 8, 9 and 18, 1957, he sold heroin to Police Officer Nelson, each transaction being the subject of one of the counts of the indictment.

On the first occasion the officer was accompanied by one Daisy, an informant, who introduced him to defendant as "her old man." The officer was carrying a suit of clothes and

a coffee pot. Garza asked about the size of the suit and pro-nounced it too short. Asked how much he would give for the coffee pot, defendant said "a half," which term in under-world parlance signifies a half gram of heroin. Defendant then spoke in Spanish to his employee Villareal and told the officer, who did not understand that language, "I am having my boy take care of you. It will be in just a minute." In about five minutes Villareal handed Nelson a bindle of heroin which was wrapped in a Blue Star razor blade cover. De-fendant kept the coffee pot.

On April 9, Nelson went again to the café. He then had a number of shirts which he showed to defendant who selected two and asked what Nelson wanted for them; he was told "a half"; then defendant spoke in Spanish to Villareal who went behind a cooking stove, then behind the bar and wrapped a bindle of heroin in a book of matches. Nelson said, "Hey, man, give me a match." Villareal threw the match book containing the heroin to Nelson who left the two shirts with Garza. Villareal asked about a shirt for himself and told Nelson he could give "a real good one with a lot of stuff in it." Garza was present at the time.

On April 18th Nelson returned to the bar with a brown beaver-type hat. Garza said it was too big but "Colalos wants a hat." Nelson: "Well, you know what I want." Garza: "Yeah, I know. Colalos is a pusher, too." The hat deal did not go through, so Nelson brought from his automobile eight more shirts similar to those produced on the former occasion. Garza asked how much he wanted for them and he said, "Well, eight would bring me one and a half." Garza said: "No. Cash." Nelson said that three or four dollars would be fine. So Garza took the shirts, sold two of them to another customer for six dollars, showed the money to Nelson and said he would give him "a half" for it. Nelson assented and de-fendant said: "It will be in just a minute. I will have my boy take care of you." Nelson said "Okay," took a seat at the bar and after he had waited a few minutes defendant asked if he had been taken care of. He said "No," defendant spoke to Villareal in Spanish and he then came to Nelson, picked up a book of matches and placed a bindle of heroin therein. Nelson said, "Hey, man, give me a match." Villareal then handed the book to Nelson who said, "Cool," and left the bar.

Defendant denied all of these sales, testifying that he paid $7.50 for the coffee pot, $5.00 for two shirts, sold another two

shirts to a customer for $6.00, delivering the money to Nelson. Also that he loaned Nelson $2.00 on the hat on April 18th. This is a different defense from the one advanced to Officer Bowser, who had a conversation with defendant at the police building on the day of his arrest. After certain evasions and denials on defendant's part, Officer Nelson was called into the room and read his notes to defendant. Bowser said: " 'What do you have to say to that, Mr. Garza?' And at that time he said to Officer Nelson, 'I never really sold you anything.' And I said, 'Now, just a moment, Mr. Garza. Do you mean by that that you never actually handed Officer Nelson anything?' And he said, 'Yes.' And I said, 'But you have listened to all these facts that Officer Nelson has just read to you, and you do recall these transactions, where the merchandise was exchanged for narcotics.' And he says, 'Yes, but I never actually handed him anything.' "

Nelson's evidence needed no corroboration; the court rejected Garza's; and manifestly the evidence is sufficient to sustain the conviction upon all three counts.

Appellant's major contention is that he was denied fundamental rights through nondisclosure of the name of the informant who accompanied Officer Nelson on the first occasion. There was no informant present on the 9th or 18th of April.

 The subject was first introduced at the beginning of the cross-examination of Nelson: "Q. When you entered this place of business on April 8th, who was with you? A. There was another person with me, sir. Q. Who was that person? A. Sir, I would like to refer to the Code of Civil Procedure, 1881.5, without giving that source of information. Q. This was an informant who was with you? A. Sir? I can't hear you, sir. Q. Was this an informant that was with you? A. Yes, sir. Q. Was this informant present during the entire conversation you had with Mr. Villareal and Mr. Garza? A. No sir. . . . The Court: He is asking you, Was the informant present during part of the conversation? The Witness: I am not too sure, sir. . . . The Court: Well, don't your notes show? The Witness: No, sir. . . . Q. By Mr. Bratton: Have you had occasion to use this informant before? . . . The Witness: Yes, sir." That is all that occurred with reference to the informant until defendant took the witness stand. There was no demand for disclosure of the informant's name and no motion or request to the court to require such disclosure. (As to the effect of failure to make such a demand, see *Lorenzen* v. *Superior Court*, 150 Cal.App.

2d 506, 513 [310 P.2d 180]; *Robison* v. *Superior Court,* 49 Cal.2d 186, 188 [316 P.2d 1].) As it did not affirmatively appear during the examination of Officer Nelson that the informant was present at the conversation between him and Garza, there was no occasion for revealing the name at that time.

■ Counsel for appellant, having conceded that trial counsel "did not further ask the court to compel the witness to answer," argues that it was the affirmative duty of the judge to require a disclosure even though no request for a ruling was made. Reliance is placed upon cases such as *People* v. *Golsh,* 63 Cal.App. 609 [219 P. 456]; *People* v. *Sheffield,* 108 Cal.App. 721 [293 P. 72]; *People* v. *Frahm,* 107 Cal.App. 253 [290 P. 678]; *People* v. *Harris,* 87 Cal.App.2d 818 [198 P.2d 60]; *People* v. *Diaz,* 105 Cal.App.2d 690 [234 P.2d 300], to the effect that the judge in a criminal trial is charged with the duty of protecting the fundamental rights of the defendant. But those cases do not hold, nor are we aware of any to the effect that the judge must assume to conduct the defense of one who is represented by counsel. Probably this failure to press for an answer from the witness is explained by the fact that, as appeared from his own later testimony, defendant knew the identity and name of the person who accompanied the officer.

■ It has been held that a disclosure of the name of an informant is not required in the absence of a showing that he or she was in some manner a participant in the transaction upon which defendant is being tried; that this is so even though proper motion or other demand therefor is made. So held in *People* v. *Moore,* 154 Cal.App.2d 43, 46 [315 P.2d 357]; *People* v. *Gonzales,* 141 Cal.App.2d 604, 607 [297 P.2d 50]; *People* v. *Dewson,* 150 Cal.App.2d 119, 125 [310 P.2d 162]; *People* v. *Alaniz,* 149 Cal.App.2d 560, 567 [309 P.2d 71]. ■ On the other hand a right to disclosure is recognized in cases where the informant has been a participant in some manner or to some degree in the crime. This rule is based upon the theory that his or her testimony may be valuable to defendant in refutation of the testimony of the enforcement officer or by way of impeachment of the witness. Such cases are: *People* v. *Lawrence,* 149 Cal.App.2d 435, 450 [308 P.2d 821]; *People* v. *Castiel,* 153 Cal.App.2d 653, 656 [315 P.2d 79]; *People* v. *Alvarez,* 154 Cal.App.2d 694, 696 [316 P.2d 1006]; *People* v. *Cox,* 156 Cal.App.2d 472, 477

[319 P.2d 681]; *People* v. *Williams,* \*(Cal.App.) 323 P.2d 824; *People* v. *Marquez, ante,* p. 362 [324 P.2d 918].

▮ Clearly there was no occasion for revealing the informant's name prior to the time that defendant Garza took the witness stand and reopened the subject. He testified: "Q. Do you recall on the 8th day of April having met Officer Nelson in your place of business? A. Yes, I do. Q. Who was present when you met Mr. Nelson? A. There were several people present at the time. Q. Can you tell me who they were? A. Well, Mr. Celestino Villareal was one, a colored girl by the name of Daisy—I don't know her last name—but she came in there with Officer Nelson, and she introduced me to him as her old man. Q. Did you know this party called Daisy? Had you known her before? A. Yes. Q. Did you enter into a conversation then with Mr. Nelson in the presence of this party? A. Yes, I did. Q. What was the gist of your conversation with Mr. Nelson? A. It was in reference to this coffee pot." Again: "Q. Did this girl by the name of Daisy—did you call her——? A. Yes. Q. Did she enter into the conversation at this time? A. She was just sitting there in the booth, didn't say a word." That is all that occurred during the presentation of the defense concerning the subject of the informer. There was no request for any further information about Daisy. She was known to defendant, he said she was present during the conversation and of course he was fairly apprised of the need of her testimony to corroborate his own. Villareal was present at the same conversation, but counsel's reply brief aptly says, "further more having plead guilty to a felony, he would have been impeached and of little or no value to the defendant." Hence defendant knew he needed Daisy, with whom he was acquainted. The conversation was on April 8, 1957, and the trial began on July 29, 1957. No competent showing was made or is made as to why defendant had not located Daisy and produced her as a witness. In fact, he needed no disclosure for he knew the witness and knew she had firsthand knowledge of the conversation. He claims that he did not know that she was an informer but that is immaterial; if it has any significance, it is by way of emphasis upon the fact that he himself should have had Daisy present at the trial. The rule which appellant invokes was designed to afford information which this defendant had,

---

\*A hearing was granted by the Supreme Court on June 4, 1958.

and it cannot be capitalized unless proper steps are taken at or before the trial.

Upon motion for new trial the point now argued was raised for the first time,—that defendant had been denied a fundamental right because the court did not force a disclosure of Daisy's name notwithstanding the absence of a request for a ruling. The argument took the form of a claim of newly discovered evidence. The court said: "What is your newly discovered evidence, if any? MR. SCHENK: The only basis would be to have the confidential informer brought into court to testify. THE COURT: Not newly discovered evidence. MR. SCHENK: No, brought out at the trial." Certainly this showing afforded no ground for a new trial.

The circumstances here presented do not show a disregard of any of defendant's fundamental rights, nor do they warrant the overriding of the public interest which requires use of informants in the suppression of the nefarious trade in which defendant was engaged. Traffic in narcotics spreads as a great blight over the state. It is the imperative duty of every law enforcement officer to use utmost zeal to stamp it out and the duty of the courts to lend all legitimate aid to that end. We must not permit undue theoretical refinements to work the liberation of proven peddlers of narcotics. This defendant is clearly guilty of the charges against him. He should not and cannot be released because of the court's failure to furnish him of its own motion information as to a possible defense witness whose name he knows and whose presence at the first criminal transaction was known to and remembered by him.

Appellant also argues that the court erred in denying his motion to dismiss the indictment under Penal Code, section 995, for want of sufficient competent supporting evidence. The point cannot be considered because the evidence taken before the grand jury is not in the record brought to this court.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.