[Crim. No. 6243.   In Bank.   Oct. 1, 1958.]

THE PEOPLE, Respondent, v. ROBERT McSHANN, Appellant.

804

Vaughns, Dixon & White and Clinton W. White for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment of conviction on two counts of violation of section 11500 of the Health and Safety Code. Count one charged a sale of heroin on November 26, 1956. Count two charged possession of heroin on November 27, 1956.

The prosecution's evidence showed that on November 26, 1956, Police Officers McBee, Hilliard, Leen, and Goodrum met a confidential informer in Oakland. Officers McBee and Hilliard searched the informer and found no narcotics on him. The informer, accompanied by the four officers, then went to the Oakland Police Department where he made an appointment by telephone for the purchase of narcotics from defendant. Officer McBee dialed the number listed for the residence of defendant, and a recording was made of the conversation. Officers McBee, Hilliard, and Goodrum were present during the telephone conversation and later listened to the recording. The recording was played before the jury, and the officers identified the voice talking to the informer as defendant's.

The officers gave the informer a $20 bill, a $10 bill and a $5.00 bill, each dusted with fluorescent powder. They took him to the vicinity of Market and Grand Streets where he entered an automobile driven by defendant. Officer McBee followed the automobile until he lost sight of it. Ten or fifteen minutes later the informer entered Officer McBee's automobile at 21st and Market Streets and gave Officer McBee

a small bindle containing a white powder later identified as heroin. Officer Goodrum saw the informer enter the automobile identified as defendant's and followed it until the informer got out and entered Officer McBee's automobile.

On November 27, 1956, the informer again made a telephone call to defendant, which was also recorded (and later played to the jury), and arranged to purchase heroin from him at a bar. Officer McBee and the informer then went to the vicinity of the bar. Later Officer Hilliard joined them, and after listening to the recorded conversation he obtained a warrant to search defendant's premises.

On November 27th Officers Goodrum, Reppas,and Woishnis kept defendant's residence under surveillance. Officer Hilliard instructed them to follow defendant when he left his residence and arrest him at the first opportunity. Thereafter defendant left his residence in an automobile. He stopped at the intersection of Adeline and Market Streets for a traffic signal, and the officers drove their automobile in front of his and told him that he was under arrest. They told him to back his car into a gas station and to get out and place his hands on top of the car. As he got out of the car, Officer Woishnis observed a "silvery flutter" and said: "He dropped it." Officer Goodrum saw something shiny "hit off of his [defendant's] shoe and land on the ground . . . ." Officer Reppas picked up four tinfoil packages and asked defendant: "What about these?" Defendant said he didn't know anything about them. A smaller package wrapped in cellophane was found in defendant's pocket. All five packages contained heroin. The officers, together with Officers Hilliard and McBee, then went to defendant's residence and searched it. They found $1,058, including a $20 bill, a $10 bill and a $5.00 bill on which an ultraviolet light disclosed a large amount of fluorescent powder. The prosecution's evidence also showed that defendant made certain admissions after his arrest.

Defendant testified that he was not a party to the alleged telephone conversations, denied the alleged meeting with the informer, and denied that he had possession of narcotics on November 27th.

During the cross-examination of Officers McBee and Hilliard before the jury and of Officer Hilliard on the hearing on probable cause in the absence of the jury, the trial court sustained on the ground of privilege (Code Civ. Proc., § 1881, subd. 5) the prosecution's objection to questions by the de-

fense seeking to obtain the name of the informer. Defendant contends that the trial court committed prejudicial error in sustaining these objections.*

### Count One: The Sale of Heroin on November 26, 1956

Since the alleged sale by the defendant was to the informer, defendant was clearly entitled to disclosure of his identity. (*Roviaro* v. *United States,* 353 U.S. 53, 58 [77 S.Ct. 623, 1 L.Ed. 639]; *People* v. *Alvarez,* 154 Cal.App.2d 694, 696 [316 P.2d 1006]; *People* v. *Castiel,* 153 Cal.App.2d 653, 656-659 [315 P.2d 79]; *People* v. *Lawrence,* 149 Cal. App.2d 435, 451 [308 P.2d 821].) The People contend, however, that defendant was not prejudiced invoking the evidence that defendant received two telephone calls from the informer and that he made a sale to the informer to establish that the defendant knew the informer's identity. That very evidence was in issue, however, for defendant denied that he received such calls or that he made such a sale. There was no finding that the defendant knew the informer and it cannot be assumed that he did. Such an assumption would in effect assume his guilt. (See *Roviaro* v. *United States, supra,* 353 U.S. at 60.)

### Count Two: The Possession of Heroin on November 27, 1956

The People seek to uphold the conviction on count two on the grounds that the informer's identity has no bearing on that charge and that in any event there is a privilege of nondisclosure of informers.

The common-law privilege of nondisclosure is based on public policy. ''The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.'' (*Roviaro* v. *United States, supra,* 353 U.S. at 59.) The informer is thus assured of some protection against reprisals. The use of informers is particularly effective in the enforcement of sumptuary laws such as those directed against gambling, prostitution, or the sale and use of liquor and narcotics. Disclosure of the informer's identity ordinarily destroys his usefulness in obtaining information thereafter. (See Don-

---

*Defendant does not contend that the recorded telephone conversations were an unlawul interception and therefore inadmissible. (See *People* v. *Malotte,* 46 Cal.2d 59, 64 [292 P.2d 517].)

nelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L. J. 1091, 1093; 1 U.C.L.A. L. Rev. 405, 512.)

■ Section 1881, subdivision 5 of the Code of Civil Procedure encompasses the privilege of nondisclosure of informers: "A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure." There is a divergence of opinion as to whether the common-law privilege covers only the identity of the informer or also includes the contents of the communication. (See McCormick, Evidence [1954], pp. 309-311; Donnelly, *supra*, 60 Yale L. J. at 1094-1095; 98 U. of Pa. L. Rev. 719, 730.) Since the reasons for the privilege relate primarily to the identity of the informer, some authorities take the position that the privilege does not extend to the communications unless the contents would disclose or tend to disclose the identity of the informer. (See Wigmore, Evidence [3d ed.], vol. 8, p. 755; McCormick, *supra*, p. 310.) Under section 1881, subdivision 5 it extends to the communications "when the public interest would suffer by the disclosure."

■ It is for the court to determine whether the public interest will suffer by disclosure. (See *Dwelly* v. *McReynolds*, 6 Cal.2d 128, 131 [56 P.2d 1232]; Wigmore, *supra*, vol. 8 at 798-801; 22 Cal. L. Rev. 667, 676.) ■ At common law the privilege could not be invoked if the identity of the informer was known to those who had cause to resent the communication. (See *Roviaro* v. *United States*, 353 U.S. 53, 60 [77 S.Ct. 623, 1 L.Ed.2d 639].) ■ Under section 1881, subdivision 5 the test is whether the public interest would suffer by the disclosure. Conceivably, even when the informer may be known to persons who have cause to resent the communication, disclosure in open court might still be against the public interest. ■ A defendant who knows the identity of the informer, however, will ordinarily not be prejudiced by a refusal to disclose that identity.

■ There is general agreement that there is no privilege of nondisclosure if disclosure "is relevant and helpful to the defense of the accused or essential to a fair determination of a cause . . ." (*Roviaro* v. *United States, supra*, 353 U.S. at 60-61; see *People* v. *Castiel, supra*, 153 Cal.App.2d at 659; *People* v. *Lawrence, supra*, 149 Cal.App.2d at 451; *Portomene* v. *United States*, 221 F.2d 582, 583-584; *United States* v. *Conforti*, 200 F.2d 365, 367; *Sorrentino* v. *United States*, 163

F.2d 627, 628-629; *United States* v. *Li Fat Tong*, 152 F.2d 650, 651-652; *Wilson* v. *United States*, 59 F.2d 390, 392; *Marks* v. *Beyfus*, L.R. 25 Q.B.D. 494, 498; *Centoamore* v. *State*, 105 Neb. 452 [181 N.W. 182, 183] ; McCormick, *supra*, p. 310; Morgan, Basic Problems of Evidence [1954], p. 119; Wharton, Criminal Evidence [12th ed.], vol. 3, pp. 136-137; Wigmore, *supra*, vol. 8, p. 756 ;. Underhill, Criminal Evidence, vol. 2, pp. 820-821; 22 Cal. L. Rev. 667, 670; 98 U. of Pa. L. Rev. 719, 730-731; 1945 Wis. L. Rev. 239, 244-245; Uniform Rules of Evidence, rule 36.)

■ Disclosure is not limited to the informer who participates in the crime alleged. The information elicited from an informer may be "relevant and helpful to the defense of the accused or essential to a fair determination of a cause" even though the informer was not a participant. For example, the testimony of an eyewitness-nonparticipant informer that would vindicate the innocence of the accused or lessen the risk of false testimony would obviously be relevant and helpful to the defense of the accused and essential to a fair determination of the cause.

Disclosure is frequently a problem in such cases as the present one involving violations of the narcotics laws, when the so-called informer is also a material witness on the issue of guilt. A mere informer has a limited role. "When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged." (*People* v. *Lawrence, supra,* 149 Cal.App.2d at 450.) ■ His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies.

■ When it appears from the evidence, however, that the informer is also a material witness on the issue of guilt, his identity is relevant and may be helpful to the defendant. Nondisclosure would deprive him of a fair trial. ■ Thus, when it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal. (See *Roviaro* v. *United States, supra,* 353 U.S. at 61.) Any implications to the contrary in *People* v. *Cox,* 156 Cal.App.2d 472, 477 [319 P.2d 681], and *People* v. *Gonzales,* 136 Cal.App.2d 437, 440-441 [288 P.2d 588], are disapproved.

*Jencks* v. *United States,* 353 U.S. 657, 671-672 [77 S.Ct. 1007, 1 L.Ed.2d 1103], involved a comparable situation wherein the defendant sought the production of F.B.I. reports made by the two principal witnesses against him on a charge that he falsely swore in an affidavit that he was not a member of the communist party. The court stated: "It is unquestionably true that the protection of vital national interests may militate against public disclosure of documents in the Government's possession. . . . The Attorney General has adopted regulations . . . declaring all Justice Department records confidential and that no disclosure, including disclosure in response to a subpoena, may be made without his permission.

"But this Court has noticed in *United States* v. *Reynolds,* 345 U.S. 1 [73 S.Ct. 528, 97 L.Ed. 727, 32 A.L.R.2d 382], the holdings of the Court of Appeals for the Second Circuit that, in criminal causes '. . . the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. . . .' 345 U.S., at 12."

Likewise, if the informer in the present case was a material witness as to the possession charged in count two, the refusal to disclose his identity was prejudicial error as to that count.

Defendant denied that he had heroin in his possession and denied that he received the alleged telephone call. Officer McBee and Officer Hilliard testified to the telephone call, and a recording thereof cut by Officer Hilliard was played before the jury. The informer's telephone call was persuasive evidence on possession, for it indicated that defendant was en route to make a sale of heroin when he was arrested and therefore knowingly had possession at that time. As the originator of the telephone call the informer was a material witness on the issue of possession. The prosecution made him such a witness by introducing evidence of his telephone call to make a purchase of heroin and by playing a recording of the telephone conversation before the jury.

The prosecution could have relied solely on the testimony of the officers as to defendant's possession of heroin and as to his admissions without reference to the telephone call. They chose instead also to introduce evidence of the telephone

call, which substantiated the testimony of Officers Goodrum and Reppas and discredited defendant's. Defendant denied receiving the call. He had no fair opportunity to substantiate his denial and impeach the testimony of the officers without disclosure of the informer's identity. Had there been disclosure, the informer might have testified that no such telephone call was made, that it was not defendant who received the call, that someone else was called, or that there was an entrapment.

The cross-examination of Officers McBee and Hilliard as to the telephone call and the identity of its originator dealt with an alleged telephone call to the defendant setting up a sale and the identity of the person making that call. It did not deal with communications made to them "in confidence" (Code Civ. Proc., § 1881, subd. (5)) or with the identity of a person making communications "in confidence."

There are strong parallels between the instant case and *Roviaro v. United States, supra,* 353 U.S. at 58-59, wherein defendant was charged with a sale of heroin (count one) and with "illegal transportation of narcotics" (count two). A conviction under count two was proper "when the Government has proved that the accused possessed narcotics, unless the accused explains or justifies such possession." (353 U.S. at 63.) The Government sought to uphold the conviction on count two on the ground that the identity of the informer (John Doe) had no bearing on that charge and was therefore privileged. The Government had introduced evidence that John Doe had a conversation in his car with defendant as he drove him to a place where defendant got out of the car, walked to a nearby tree, picked up a small package, returned and deposited the package in Doe's car and left in another car. An officer secreted in the trunk of Doe's car testified to the conversation between Doe and the defendant, and both he and another officer testified that they saw the defendant pick up the small package and return to Doe's car. The package contained an opium derivative. The court held that under the circumstances, "John Doe's possible testimony was highly relevant and might have been helpful to the defense. . . . The informer was the only witness [other than the accused] in a position to amplify or contradict the testimony of government witnesses." (353 U.S. at 63-64.)

Although the informer in the present case was not an eyewitness to the crime, as John Doe was in the Roviaro case, the prosecution's own election to introduce evidence of the

telephone conversation made it imperative that it disclose the identity of the informer, for he alone could amplify or contradict the testimony of the officers. As in the Roviaro case nondisclosure was prejudicial error.

The judgment is reversed as to both counts.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

SPENCE, J., Concurring and Dissenting.—I concur in the reversal as to count one but dissent from the reversal as to count two. In my opinion, the case of *Roviaro* v. *United States,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639], is not authority for the majority's reversal as to both counts, but on the contrary, clearly indicates that the judgment of conviction on the second count should be affirmed.

In the Roviaro case, the two charges were (1) sale of narcotics and (2) illegal transportation of narcotics. Both charges arose out of a single transaction occurring on August 12, 1954. The Government did not "defend the nondisclosure of Doe's identity with respect to Count 1, which charged a sale of heroin to John Doe," but it sought "to sustain the judgment on the basis of the conviction on Count 2, charging illegal transportation of narcotics." (Pp. 58-59.) The court there held that, under the circumstances, it was reversible error as to both counts for the trial court to deny disclosure of the identity of the informer.

In so holding with respect to the second count, the court, after stating that "no fixed rule with respect to disclosure is justifiable" (p. 62), was careful to point out that the second count there did not "charge mere possession" (p. 63) ; that the informer had "been present with the accused at the occurrence of the alleged crime" of illegal transportation (p. 55) ; and that "the Government's informer was the sole participant, other than the accused, in the transaction charged" (p. 64). In the present case, count two did charge "mere possession" ; the informer was not "present with the accused at the occurrence of the alleged crime" charged in count two; and the informer was not a participant in the offense of "mere possession" on November 27, 1956, as distinguished from the prior offense of sale on November 26, 1956.

If, as declared in the Roviaro case, the problem is one of "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense" ; and if the question of error in refusing disclosure depends

"on the particular circumstances of each case" (p. 62), I am of the view that the balance here is clearly in favor of the public interest. The compelling reasons for preventing disclosure of the identity of informers, except where the interests of justice demand it, are forcefully stated in the dissent of Mr. Justice Clark in the Roviaro case. Here, however, we have only to follow the implications of the majority opinion in that case in order to sustain the judgment of conviction as to count two.

I would therefore reverse as to count one but affirm as to count two.

Shenk, J., concurred.

McCOMB, J., Concurring and Dissenting.—I concur in the reversal of the judgment as to count one, but dissent from the reversal of the judgment as to count two.

Respondent's petition for a rehearing was denied October 28, 1958. Shenk, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.