[Crim. No. 8783. In Bank. May 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MATIAS
ROMERO PEREZ et al., Defendants and Appellants.

Joseph A. Martin, Public Defender, and John M. Beede, Deputy Public Defender, for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendants appeal from judgments of conviction entered after a jury found them guilty of possession of marijuana. (Health & Saf. Code, § 11530.)

At 11:30 p.m., October 13, 1963, State Narcotics Agent

James Shirloh and Woodland Police Officer Glenn Barton entered a hotel room in Woodland pursuant to a search warrant and conducted a search in the presence of defendants Perez and Morales, who occupied the room. Agent Shirloh found a canvas bag and a shopping bag in each of which was a package of marijuana. He found in an ashtray a marijuana cigarette that had been partially smoked. The officers arrested defendants, took them to the police station, and interrogated them. Morales made a statement inconsistent with two statements made by Perez. Perez' statements were inconsistent with each other and with his testimony.

Defendants testified that they came to Woodland on the evening of October 12, 1963, to look for work. They met a man at a tavern who drove them to a hotel. The man put a package in Perez' canvas bag and carried it and his own shopping bag into the hotel, where he paid for defendants' room. He put the bags on the floor in defendants' room, placed $1.50 on the dresser, and left. Neither defendant looked in the bags or knew that they contained marijuana.[1] Neither of them knew the name of the man, and Morales never saw him again.

Perez testified that the man returned shortly after 7:30 the next evening, while Morales was out. He brought some tobacco cans and cigarette paper, and he rolled and smoked a cigarette that did not smell like an ordinary cigarette. He gave Perez a package and asked him to bring it to him at 9:30 p.m. at a tavern on the ground floor of the hotel. When Perez did so the man gave him $2.00. When Morales returned, Perez told him that he was suspicious and that they had better leave the next day. At 11:30 p.m., however, the officers conducted their search and arrested defendants.

Agent Shirloh had obtained a search warrant on the basis of his affidavit that he had received information from a reliable informer known to him who observed marijuana in defendants' room on October 13th. Defendants sought to have the affidavit admitted into evidence. Upon the prosecution's objection, the court ruled that the affidavit was inadmissible. During the cross-examination of Shirloh, the court also sustained, on the ground of privilege (Code Civ. Proc., § 1881, subd. 5), the prosecution's objection to questions seeking the name of the informer. The court committed prejudicial error in sustaining these objections.

---

[1] In response to Agent Shirloh's interrogation at the police station, however, Perez said that he and Morales ''were in on the deal and had agreed to keep the marijuana for the man.''

"There is no privilege of nondisclosure [of an informer's identity] if disclosure 'is relevant and helpful to the defense of the accused or essential to a fair determination of a cause. . . .' " (*People* v. *McShann,* 50 Cal.2d 802, 807 [330 P.2d 33], quoting *Roviaro* v. *United States,* 353 U.S. 53, 60-61 [77 S.Ct. 623, 1 L.Ed.2d 639].) ▮ Thus, when the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal. (*Roviaro* v. *United States,* 353 U.S. 53, 60-61 [77 S.Ct. 623, 1 L.Ed.2d 639]; *People* v. *McShann,* 50 Cal.2d 802, 808 [330 P.2d 33].) In *Roviaro* v. *United States, supra,* a case that arose under the federal narcotics law, disclosure of an informer's identity was held to be required because the informer "had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. . . . He was the only witness who might have testified to [the defendant's] possible lack of knowledge of the contents of the package [containing the narcotics]. . . ." (353 U.S. at p. 64.)
▮ Similarly, in the present case the informer was a participant in the crime if it was he who left the marijuana in defendants' room. (*People* v. *Kiihoa,* 53 Cal.2d 748, 751 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Williams,* 51 Cal.2d 355, 359-360 [333 P.2d 19]; *People* v. *Alvarez,* 154 Cal.App.2d 694, 696 [316 P.2d 1006].) His testimony might have disclosed an entrapment (*People* v. *McShann,* 50 Cal.2d 802, 810 [330 P.2d 33]; *People* v. *Lawrence,* 149 Cal.App.2d 435, 451 [308 P.2d 821]), and he was the only person who might have confirmed defendants' testimony that they did not know that the bags in their possession contained marijuana.
▮ It is contended, however, that there is no evidence that the man who left the marijuana in defendants' room was also the informer. There is no merit in this contention. The court improperly refused to consider the affidavit supporting the search warrant, which would have shown that the informer observed marijuana in defendants' room on October 13th. Perez remained in the room most of that day, and the only person other than defendants known to have been in the room before the officers entered was the stranger alleged to have "planted" the marijuana. Defendants, therefore, showed cause to believe that the stranger was the undisclosed informer. They seek the identity of the informer for the specific purpose of determining if he is the stranger who might be crucial to their defense. They need not prove conclusively

before disclosure the very fact they seek to obtain through disclosure. Such certainty of proof is not required as a foundation for obtaining the identity of an informer who might be helpful to the defense of the accused. (*People* v. *Castiel,* 153 Cal.App.2d 653, 659 [315 P.2d 79]; see *People* v. *Riser,* 47 Cal.2d 566, 587-588 [305 P.2d 1].) ▮ The refusal to require such disclosure was prejudicial error.

▮ If defendants are retried, the statements obtained from them while in police custody cannot properly be admitted in evidence over objection, since neither defendant was informed of his right to counsel or of his right to remain silent. (*Escobedo* v. *Illinois,* 378 U.S. 478, 490-491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado, ante,* pp. 338, 346-347 [42 Cal.Rptr. 169, 398 P.2d 361].) ▮ Those rights attach when the criminal "process shifts from investigatory to accusatory." (*Escobedo* v. *Illinois, supra,* 378 U.S. at 492; *People* v. *Dorado, supra, ante,* at pp. 348-349.)
▮ Thus, when the accused has been arrested and the authorities begin a process of interrogation that lends itself to eliciting incriminating statements, the accused is entitled to counsel. (*People* v. *Stewart, ante,* pp. 571, 577 [43 Cal. Rptr. 201, 400 P.2d 97].)

▮ In determining whether the authorities are carrying out such a process of interrogation, we must consider "the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances." (*People* v. *Stewart, ante,* pp. 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].)
▮ In the present case, after Agent Shirloh and Officer Barton arrested defendants and took them to the police station, they questioned defendants separately and together, intermittently from midnight until 7 a.m., with the assistance of an interpreter for the Spanish language. Shirloh put questions to both defendants in the form of accusations. He told Perez, for example, that some money marked for identification by the authorities had been found in his possession when he was arrested, and then asked him to reconsider his answers in light of such accusation. Shirloh testified that he repeatedly showed Perez photographs of a man because he "wanted to have on record . . . statements by him, pointed statements, [that] he did not know this man." Both Perez and Morales made statements during these predawn sessions. That afternoon, Shirloh, Barton, and a deputy district attorney took turns questioning Perez and elicited another statement. It is

thus clear that the authorities were carrying out a process of interrogation to elicit incriminating statements and that the statements obtained from both defendants are therefore inadmissible. (*People* v. *Stewart, ante,* pp. 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].) Accordingly, we need not discuss Perez' contention that the statements made by him were involuntary and for that reason inadmissible.

 There is no merit in defendants' contention that the trial court erroneously refused to give an instruction on the defense of entrapment. There was no evidence that the man defendants allege ''planted'' the marijuana was a law enforcement officer or someone acting in cooperation with the authorities. (*Sherman* v. *United States,* 356 U.S. 369, 373-375 [78 S.Ct. 819, 2 L.Ed.2d 848].) If such evidence is presented upon retrial, however, an entrapment instruction would be appropriate. We disagree with the Attorney General's contention that to invoke the defense of entrapment a defendant must admit committing the criminal acts charged. Although the defense is available to a defendant who is otherwise guilty (*People* v. *Benford,* 53 Cal.2d 1, 9 [345 P.2d 928]), it does not follow that the defendant must admit guilt to establish the defense. A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. (*People* v. *West,* 139 Cal.App.2d Supp. 923, 926 [293 P.2d 166]; *Henderson* v. *United States* (5th Cir.) 237 F.2d 169, 173.) Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt. When the evidence does show such conduct, the court has a duty to root its effects out of the trial upon its own initiative if necessary. (See *Sorrells* v. *United States,* 287 U.S. 435, 453, 457 [53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249] [Roberts, J., concurring].) Entrapment is recognized as a defense because ''the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime.'' (*People* v. *Benford,* 53 Cal.2d 1, 9 [345 P.2d 928]; see *People* v. *Cahan,* 44 Cal.2d 434, 445-446 [282 P.2d 905, 50 A.L.R.2d 513].) A rule designed to deter such unlawful conduct cannot properly be restricted by compelling a defendant to incriminate himself as a condition to invoking the rule. Thus, the defendant may challenge the legality of a search and seizure without admitting

that the property seized was taken from him and without asserting a proprietary interest in the premises entered. (*People* v. *Ibarra,* 60 Cal.2d 460, 465 [34 Cal.Rptr. 863, 386 P.2d 487] ; *People* v. *Martin,* 45 Cal.2d 755, 759-761 [290 P.2d 855].) To compel a defendant to admit guilt as a condition to invoking the defense of entrapment would compel him to relieve the prosecution of its burden of proving his guilt beyond a reasonable doubt at the risk of not being able to meet his burden of proving entrapment. To put the defendant in that dilemma would frustrate the assertion of the defense itself and would thus undermine its policy. (See *People* v. *West,* 139 Cal.App.2d Supp. 923, 926 [293 P.2d 166] ; *Henderson* v. *United States* (5th Cir.) 237 F.2d 169, 172-173; 1 Witkin, Cal. Crimes (1963) p. 169; 73 Harv.L.Rev. 1333, 1343; 70 Harv.L.Rev. 1302; 30 So.Cal.L.Rev. 542.) Statements to the contrary in the cases cited in the margin are disapproved.[2]

The judgments are reversed.

Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

McComb, J., and Schauer, J.,* concurred in the judgment.

---

[2]*People* v. *Herrera,* 232 Cal.App.2d 558, 559 [43 Cal.Rptr. 12]; *People* v. *Herrera,* 232 Cal.App.2d 561, 563 [43 Cal.Rptr. 14]; *People* v. *Adams,* 213 Cal.App.2d 536, 540 [29 Cal.Rptr. 57]; *People* v. *Sherman,* 211 Cal.App.2d 419, 426 [27 Cal.Rptr. 353]; *People* v. *Benson,* 206 Cal.App.2d 519, 532 [23 Cal.Rptr. 908]; *People* v. *Diaz,* 206 Cal.App.2d 651, 671 [24 Cal.Rptr. 367]; *People* v. *Spencer,* 193 Cal.App.2d 13, 18 [13 Cal.Rptr. 881]; *People* v. *Polsalski,* 181 Cal.App.2d 795, 801 [5 Cal.Rptr. 762]; *People* v. *Lollis,* 177 Cal.App.2d 665, 670 [2 Cal.Rptr. 420]; *People* v. *Jones,* 176 Cal.App.2d 743, 749 [1 Cal.Rptr. 637]; *People* v. *Tillman,* 142 Cal.App.2d 404, 407 [298 P.2d 631]; *People* v. *Cummings,* 141 Cal.App.2d 193, 201 [296 P.2d 610]; *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368]; *People* v. *Schwartz,* 109 Cal.App.2d 450, 455-456 [240 P.2d 1024]; *People* v. *Johnson,* 99 Cal.App.2d 559, 562 [222 P.2d 58]; *People* v. *Gelardi,* 77 Cal.App.2d 467, 477 [175 P.2d 855]; *People* v. *Grijalva,* 48 Cal.App. 690, 694 [121 P.2d 32]; *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003].

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.