[Crim. No. 968.   Fourth Dist.   Sept. 29, 1954.]

THE PEOPLE, Respondent, v. MARTIN EMILL TOKICH, Appellant.

Edward S. Cooper for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Defendant and appellant Martin Emill Tokich was convicted by the court, sitting without a jury, of the crime of feloniously possessing four grains of heroin on September 4th, 1953, in violation of section 11500 of the Health and Safety Code. There was a prior felony conviction under section 503 of the Vehicle Code admitted, for which he served a term in state's prison. Defendant's motion for a new trial was denied.

Defendant and one Bellatich were apprehended in front of the premises at 2025 West 15th Street in Santa Ana on September 4, 1953, about 4 p. m. They had driven their car past these premises at 3 p. m. and two officers, pursuant to certain information obtained by them, were watching their actions. As defendant left the car and was approaching the premises he was stopped by the officers and a weapon search was made. Bellatich, who remained seated in the car, was similarly searched. No weapons were found and they were taken to the sheriff's office and there a "skin search" was made and their clothing was entirely removed. When defendant's shirt was removed it was given to one of the officers who discovered, in the defendant's presence, four packages of white powder wrapped in tinfoil, in the upper left front pocket thereof. Both defendant and Bellatich denied the packages were theirs.

The following day tests were made of the substance and it was found to be heroin. A conversation was then had with

defendant and, according to the officers, there was a general conversation between them as to narcotic activities in that area. One of the officers remarked to the defendant: "One or the other of the two of you are, or probably both of you are guilty of the possession of these four papers"; that he did not want an innocent man to be tried for the possession if he was actually innocent; and that he would like to know to whom the papers belonged. The defendant replied that he had been peddling "H" for approximately six months prior to the day he was arrested in Los Angeles County for possession of "120 caps of heroin." The officer then said that he asked defendant if the papers found in his pocket belonged to him and he stated that they did; that he asked him if Bellatich knew anything about the papers and he stated he did not know anything about them; that he was then asked how Bellatich happened to be with him and defendant said that on his way from San Pedro to Santa Ana he stopped by Bellatich's home and asked if he would ride with him to Santa Ana to see his sister; that defendant was then asked what he was going to do with the four papers that he had in his possession and he stated that he was about to deliver them to a customer when he was arrested; and that he then asked defendant what he would do if some individual turned on one of his children and he stated he would kill him.

Defendant later said that he had received the heroin folded in papers, i. e., tinfoil, the way they were when the officers found them, and said that although there was not much profit involved doing it that way, he had a very good connection and that is how he made the profit. The terms "paper," "bindles" and "H" were defined as common jargon among people with knowledge of narcotics, and referred to narcotics.

Defendant claims that a search for narcotics on his person was originally made in front of the premises and none was found. He denied knowledge of the presence of the heroin which the officer claimed he found in his shirt pocket at the jail. He stated that in a subsequent conversation with the officers one of them told him the judge would hang both of them if one did not "cop out," so he admitted possession to release Bellatich; that he figured he was already in "hot water" in Los Angeles because he was "going to go or to be penalized for" a similar charge there; that he changed his story at the trial because his attorney told him to tell the truth, so he then denied possession and previous knowledge

of the presence of heroin in his shirt pocket for the reasons stated.

After the defendant testified to this story on the witness stand the trial judge questioned him, stating that he was "curious about" defendant's trouble in Los Angeles, and inquired as to its status. The defendant stated he had been charged with a felony count of "narcotics" in Los Angeles, was on bail, and had not pleaded to the charge.

On appeal, defendant now claims that the evidence was insufficient to support the judgment. A review of the evidence above indicated clearly shows that there is no merit to this contention. (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]; *People* v. *Lotrean,* 120 Cal.App.2d 583 [261 P.2d 543].)

The attempted explanation of defendant's admissions was rejected by the trial judge who resolved the conflicting evidence in favor of the People. It is not the function of the appellate court to reweigh the evidence, but to view it in the light most favorable to the respondent. (*People* v. *Daugherty,* 40 Cal.2d 876 [256 P.2d 911].)

The claim that the corpus delicti was not established by proof, independent of defendant's statements and admissions, and that accordingly the court erred in receiving them in evidence, is equally untenable. (*People* v. *Cuellar,* 110 Cal.App.2d 273 [242 P.2d 694]; *People* v. *Wong Fun,* 39 Cal.App.2d 211 [102 P.2d 774]; *People* v. *Cullen,* 37 Cal.2d 614 [234 P.2d 1].)

The next contention is that the confession by defendant was shown to be involuntary and accordingly must be entirely disregarded. (*People* v. *Fox,* 25 Cal.2d 330 [153 P.2d 729]; *People* v. *Gonzales,* 24 Cal.2d 870 [151 P.2d 251].)

There is a sharp conflict in reference to the circumstances surrounding the confession of the defendant. It does not affirmatively appear from the officer's testimony that immunity was offered defendant or Bellatich if defendant confessed or that defendant's counsel made any objection to the admission of such confession in evidence on this ground. Since the evidence in this respect was conflicting, the resolution of this conflict, contrary to defendant's story, may not now be attacked on appeal. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].)

The next contention is that the evidence of the other offense of which defendant was charged in Los Angeles was inadmissible and that the question propounded to defendant by the trial judge in relation thereto was prejudicial error. It

has been held that testimony of an arresting officer that a defendant, at the time of his arrest, referred to a previous independent crime was inadmissible (*People* v. *Califro*, 120 Cal.App.2d 504 [261 P.2d 332].) It was, however, there held not to be prejudicial under the facts of that case. ■ The fact that defendant had been charged with another offense claimed to have been committed in Los Angeles County clearly would not have been admissible as a part of the res gestae. (*People* v. *Brown*, 71 Cal.App.2d 669 [163 P.2d 85].)

Counsel for defendant objected to the admission of the testimony of an officer regarding a conversation of defendant with the officers in which the prosecuting attorney asked the witness what defendant said and he remarked that he questioned him as to how long he had been engaged in the peddling of narcotics. The objection was that it was immaterial and that reference to any other offense not connected with the case would be highly prejudicial. The court then remarked that it "depended on what the answer to it was," and said: "I will have to overrule it at this time, until I find out the answer to the question." Then followed the remarks that defendant stated he had been peddling "H" for approximately six months prior to the day he was arrested in Los Angeles County for possession of 120 caps of heroin. No further objection was made and no motion to strike the answer is indicated. It is the defendant's contention that the trial court should have stricken the testimony without request of counsel for the defendant and its failure to do so was prejudicial, citing *People* v. *McDaniel*, 59 Cal.App.2d 672 [140 P.2d 88].

■ It has been held that where a defendant testifies he had no knowledge of narcotics, evidence indicating he did have such knowledge was admissible by way of rebuttal. (*People* v. *LeBeau*, 39 Cal.2d 146 [245 P.2d 302].) ■ In the instant case the defendant first denied knowledge of possession of a narcotic and later admitted it by his own confession in tape recording. He later, on the witness stand, admitted making such a confession but claimed it was made to shield his friend. He then denied knowledge of its possession and related that he was charged with the offense indicated in Los Angeles and figured he was going to be penalized there. It was then the trial court inquired more about the Los Angeles offense. Defendant was asked about the "status" of that charge and volunteered the statement that "it was for narcotics."

As indicated by the trial judge, the evidence as to defendant's guilt was "overwhelming," and left no reasonable doubt. The case was tried by the court sitting without a jury. No timely objections or motions to strike were made concerning the evidence complained of. We are convinced that the curative provisions of article VI, section 4½, of the Constitution are applicable and no reversible error resulted. (*People* v. *Codina,* 30 Cal.2d 356 [181 P.2d 881]; *People* v. *Amaya,* 40 Cal.2d 70 [251 P.2d 324].)

Any reference to the Los Angeles charge by the trial court, after conviction and on fixing bail pending time for pronouncement of judgment, could not be said to be prejudicial.

Judgment and order denying a new trial affirmed.

Mussell, J., concurred.