[Crim. No. 6281. Second Dist., Div. One. Oct. 31, 1958.]

THE PEOPLE, Respondent, v. THOMAS HARLAN
MELODY, Appellant.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Bonnie Lee Hansen, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged by information with possession of marijuana and a preparation of codeine in violation of section 11500, Health and Safety Code. He waived a jury and the cause was thereafter submitted, by stipulation of the parties, on the transcript of the preliminary hearing. Additional testimony was introduced on behalf of both the People and defendant. The trial court found defendant guilty as charged, denied a motion for a new trial and sentenced him to the county jail for six months. This appeal is from the judgment of conviction and order denying motion for new trial.

Viewing the evidence in the light most favorable to the

prosecution, the record discloses that on the evening of October 6, 1957, at approximately 9:30 o'clock, Officer Fantuzzi received information from a confidential informant that defendant had marijuana in his home at 2953 Park Center Drive. Information received by Fantuzzi from this same informant on three previous occasions had proved reliable, resulting in the arrest of five persons, four of whom had been held to answer in the superior court. Approximately one hour later Fantuzzi, accompanied by two other officers, appeared at the designated address and observed the premises for about 10 minutes. Nothing indicated that a felony was being committed within the house. The three officers then went to the front door, knocked, identified themselves as police officers and were admitted into the front room by defendant. After the officers again identified themselves, defendant was placed under arrest for a violation of the Health and Safety Code, but was not handcuffed. Asked then by the officers if they could search the house defendant said, "Sure, go ahead." The search produced a brown paper bag, a container with two white-wrapped cigarettes, a jar and a bottle, all containing a leafy material identified by experts as marijuana. A small pill bottle with 31 tablets was also found. These tablets contained a narcotic known as codeine. Questioned by one of the arresting officers about the contents of the brown paper bag, defendant admitted part ownership thereof, along with three other persons. He also stated that the marijuana in the other containers came from this original sack or bag. Defendant likewise admitted ownership of the codeine which he said was originally procured from a doctor in Honolulu. He did not have the prescription for the drug but claimed he could secure it if given the opportunity. Police then took defendant to the station and booked him for a violation of the State Narcotics Act. At no time was the informer present, nor did he accompany the officers to the premises.

Defendant took the stand in his own defense, but limited his testimony to the circumstances of the arrest and search. He at no time denied that the narcotics were found in his house or that they were owned by him. Defendant's admission to the police officers that the premises were under his control and the narcotics found thereon belonged to him remains uncontradicted in the record. However, in connection with the arrest and search, he testified that he arrived at the Park Center address at about 10 o'clock on the evening in question. He denied that he admitted the officers voluntarily,

stating that they just pushed the door in, then pushed him down into a chair and told him that he was under arrest. Defendant testified that upon being asked then if they could search the premises, he told the officers "if it will do me any good I will say no." In making this statement, defendant added he intended to deny them permission to search the premises. On cross-examination, the defendant admitted the search took place after the officer's conversation with him.

(Mr. Busch) "Q. Did they say, 'Is it all right with you if we search the place?

(Defendant) "A. I don't remember how they asked. They did make the search.

"Q. Then proceeded to make the search of the premises?

"A. Yes, sir."

During Officer Fantuzzi's cross-examination, he was asked by defendant's counsel the name of the confidential informant. After being advised by the court that under section 1881, subdivision 5, Code of Civil Procedure, he could not be examined as to communications made to him in an official confidence, when the public interest would suffer by a disclosure, the officer declared that such disclosure would not be in the public interest and refused to name him. The trial court did not require him to give the information requested.

The record is vague concerning the manner in which Officer Fantuzzi's testimony, concerning the information he received from the informer which led up to defendant's arrest, was admitted by the trial court. Unable to definitely advise the court whether there existed a question concerning the legality of the arrest or search and seizure, defendant's counsel requested that the testimony be admitted subject to a motion to strike. It was admitted and the trial court advised counsel he could later make a motion to strike. The record does not disclose that defendant's counsel ever did so. However, it is apparent throughout the trial defendant constantly claimed that the arrest and search and seizure were illegal.

Appellant herein contends that the contraband was secured as the result of an unlawful search and seizure and the trial court erred in denying his motion to suppress the evidence; and that the trial court committed prejudicial error in upholding Officer Fantuzzi's refusal to reveal the name of the informer. The record before us does not disclose the existence of a motion to suppress the evidence or any ruling thereon, although it does reveal a proper objection to the introduction of the narcotics in evidence on the ground that they had been

obtained as the result of an illegal arrest and an unlawful search and seizure.

Appellant has relied upon the illegality of his arrest to establish an unlawful search and seizure of the narcotics. Although under the recent Supreme Court case of *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39], the officer's testimony, concerning information given by the informer which was relied upon by him in arresting defendant, should have been stricken because of his refusal to reveal the identity of the informer, which would leave in the record the defendant's initial arrest without a showing of probable cause therefor, we conclude that the search of his house and the ultimate seizure of the narcotics found were made pursuant to the voluntary consent of the defendant, which justified his subsequent detention for the offense herein charged.

In the Priestly case, police acting upon the information of two informers that defendant possessed narcotics, went to defendant's apartment. After being admitted by the defendant, they arrested him and searched his person and apartment finding narcotics. The arrest and search were made without a warrant. There was no evidence that defendant in any way consented to the search. The record therein discloses that the police relied entirely upon the information of the informants to establish probable cause to make the search. The officer on direct examination testified concerning communications from the informers, but upon defendant's demand that he disclose their identity, or his testimony be struck, the officer refused to reveal their names. The motion to strike was denied. Citing, and declaring to be sound and workable the federal rule in *Roviaro* v. *United States,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639], requiring disclosure of the identity of an informer whose communications are relied upon to establish probable cause to make a search, the court held that when the prosecution seeks to show reasonable cause for a search by testimony of communications from an informer, either the identity of the informer must be disclosed when defendant seeks it, or such testimony must be struck on defendant's motion; and disapproved any holdings or implications to the contrary in *People* v. *Johnson,* 157 Cal.App.2d 555 [321 P.2d 35]; *People* v. *Salcido,* 154 Cal.App.2d 520 [316 P.2d 639]; *People* v. *Moore,* 154 Cal.App.2d 43 [315 P.2d 357]; *People* v. *Merino,* 151 Cal.App.2d 594 [312 P.2d 48]; *People* v. *Alaniz,* 149 Cal.App.2d 560 [309 P.2d 71], and *People* v. *Gonzales,* 141 Cal.App.2d 604 [297 P.2d 50]. The court said at pages

818-820: ''If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue. . . . When the prosecution relies instead on communications from an informer to show reasonable cause and has itself elicited testimony as to those communications on direct examination, it is essential to a fair trial that the defendant have the right to cross-examine as to the source of those communications. . . . Since there was no other competent evidence to justify the search and defendant made a prima facie case as to its illegality, it follows that the narcotics seized in the search were not admissible and should have been excluded.''

 Applying the pronouncements in the Priestly case to the facts at bar, it is clear that appellant's initial arrest was based solely upon information given by the informant. Had an actual motion to strike the testimony of Officer Fantuzzi concerning the arrest been made, it should have been granted upon his later refusal to disclose the informer's identity. We believe, however, that defendant's various other objections in the record adequately protected his right to have the testimony concerning his initial arrest excluded. Without it no probable cause has been shown for that arrest. Unlike the facts in the Priestly case in which the officer made both arrest and search and seizure solely upon information given by the two informers, the record in the instant case is replete with evidence that the search of appellant's house was not made until defendant told the officers they could make it. That consent to search was given to the officers is apparent from the following:

(Officer Fantuzzi) ''A . . . Sergeant O'Grady and myself

went to the front door, knocked and it was opened by Mr. Melody. At this time we identified ourselves as police officers. Mr. Melody stepped back into the front room, admitted us, and at this time we placed Mr. Melody under arrest for violation of the State Narcotic Law.

. . . . . . . . .

(Mr. Busch) ''Q. After you had informed him that you were police officers and stated that he was under arrest, what next occurred, if anything? A. He was then asked if we could make a search of his house and he said, ''Sure, go ahead.''

On redirect examination, Officer Fantuzzi was asked by Mr. Busch: ''Did you have a conversation with this defendant before you searched the premises? A. Yes sir, I did.

''Q. Did he object to your searching the premises? A. No, sir, he did not.''

This testimony, together with the defendant's account of the search created a factual issue concerning defendant's consent. Since we must view the evidence and all inferences reasonably deducible therefrom in the light most favorable to respondent, we are justified in assuming in support of the judgment of conviction an implied finding of the trial court that defendant voluntarily consented to the search. This determination is based on the trial judge's adherence to the officer's version of the search and is binding on the reviewing court unless it appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support it. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) ▆▆ It is well settled that where a defendant freely consented to a search of the premises under his control, any search made pursuant thereto is not unreasonable. (*People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Gorg*, 45 Cal.2d 776, 782 [291 P.2d 469].)

▆▆ The fact that at the time defendant gave consent he was then in custody does not make the consent to the search involuntary per se. (*People* v. *Guy*, 145 Cal.App.2d 481 [302 P.2d 657]; *People* v. *White*, 159 Cal.App.2d 586 [324 P.2d 296].) Nor do we believe in the instant case that the fact the initial arrest was later deemed to be without probable cause has any bearing on whether the consent subsequently given to search the premises was voluntary.

▆▆ Since the record before us discloses competent evi. dence that defendant's consent was voluntary, justifying the

search of defendant's premises, and that the officers relied thereon in making the search, we do not believe this case comes within the purview of the Priestly case requiring the dis-closure of the identity of the informer, or upon refusal thereof, an exclusion of the narcotics seized in the search.

Having found, pursuant to a legal search, the nar-cotics in possession of defendant, the officers were then justi-fied in detaining him, taking him into custody and booking him for a violation of the State Narcotics Law (Health & Saf. Code, § 11500), a felony having been committed by him in their presence (Pen. Code, § 836).

It is finally contended by appellant that the trial court's refusal to require disclosure of the informant's iden-tity deprived him of a full and fair opportunity to present a complete defense. The informant did not accompany the arresting officers to the premises and admittedly was a non-participant in the crime charged. It is not pointed out herein by appellant, nor does the record disclose how or in what manner the identity of the informant or the information sought to be elicited would have helped to establish the de-fendant's innocence, or how the informer could be a material witness on the issue of guilt. Of importance is the fact that at *no time* has defendant ever denied narcotics were found in his house or that they belonged to him. When they were seized, he freely admitted his possession and went into some detail about how he came to have them. This remains in the record without contradiction. When defendant took the stand in his own defense at the trial, he testified only to the arrest and search and neither denied narcotics were found in his house, nor that they belonged to him. We fail to see how the infor-mation elicited from the informer or his identity could be "relevant and helpful to the defense of the accused or essen-tial to a fair determination of a cause," under the Supreme Court decision in *People* v. *McShann*, 50 Cal.2d 802 [330 P.2d 33]. He was not an eye witness or participant informer who might be able to "vindicate the innocence of the accused or lessen the risk of false testimony" or a "material witness on the issue of guilt," as in the McShann case. Referring only to the incident of November 27th, when McShann was arrested, the informer called defendant on the telephone and arranged to purchase heroin from him at a bar. Pursuant to informa-tion supplied by the informant concerning that telephone conversation, the officers followed defendant when he left his residence and arrested him. When he got out of the car, sev-

eral packages of heroin fell to the ground. Defendant denied he knew anything about them or had possession of any narcotics on November 27th. At the trial the prosecution introduced evidence of the telephone conversation between the informer and the defendant. Defendant denied he had such a conversation. The court held that although the informer was not an eye witness to the crime, the prosecution's own election to introduce evidence of the telephone conversation made it imperative that the identity of the informer be disclosed for he alone could amplify or contradict the testimony of the officers. The Supreme Court stated at page 808: "A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' (*People* v. *Lawrence, supra,* 149 Cal.App.2d at 450 [308 P.2d 821].) His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies. When it appears from the evidence, however, that the informer is also a material witness on the issue of guilt, his identity is relevant and may be helpful to the defendant. Nondisclosure would deprive him of a fair trial. Thus, when it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal." Relating evidence in the record that made the informer a material witness on the issue of possession, the telephone call to defendant regarding a purchase of heroin and the recording of the telephone conversation, the court continued: "The prosecution could have relied solely on the testimony of the officers as to defendant's possession of heroin and as to his admissions without reference to the telephone call. They chose instead also to introduce evidence of the telephone call, which substantiated the testimony of Officers Goodrum and Reppas and discredited defendant's. Defendant denied receiving the call. He had no fair opportunity to substantiate his denial and impeach the testimony of the officers without disclosure of the informer's identity. Had there been disclosure, the informer might have testified that no such telephone call was made, that it was not defendant who received the call, that someone else was called, or that there was an entrapment."

In the instant case the informant merely told the officer that defendant had narcotics in his home. He neither played a part in the criminal act with which defendant was charged, nor was present when he was arrested. The evidence uncontradicted in its disclosure of the presence of narcotics in defendant's house and his possession thereof leaves no room for the existence of any issue pertaining to his guilt. Under the peculiar facts of this case defendant, for example, did not before the trial court, and could not now, claim entrapment since he admitted the narcotics were in his possession and belonged to him. The identity of the informant does not here appear to be necessary to Melody's defense, nor does it appear that he could be a material witness on the issue of guilt. His identity is neither relevant nor even helpful to defendant in the presentation of a defense. Under the evidence before us, nondisclosure has not deprived defendant of a fair trial and the trial court's failure to require the officer to identify the informant was not prejudicial error.

For the foregoing reasons the judgment and order denying motion for new trial are and each is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 19, 1958, and appellant's petition for a hearing by the Supreme Court was denied December 23, 1958.