[Crim. No. 6375. Second Dist., Div. One. Mar. 6, 1959.]

THE PEOPLE, Respondent, v. BENNY SANTIAGO
RODRIGUEZ, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—Upon submission of the matter to the court on the transcript of the preliminary hearing, defendant was convicted of possession of heroin in violation of section 11500, Health and Safety Code. His motion for a new trial was denied and he was sentenced to the state prison. This appeal is from the judgment of conviction and order denying motion for new trial.

Appellant contends that the trial court erred in refusing to require the officer to disclose the name of the informant; that the evidence was insufficient to sustain the judgment and that it was error to deny his motion for a new trial.

We deem to be without merit appellant's first contention that the court's refusal to permit the defense to ascertain the informer's name invalidated the arrest, search and seizure.

It is conceded the officers had no warrant of arrest or search when they went to defendant's home. Officer Van Court testified that, about one and one-half hours after receiving information from a reliable informant that defendant, about whom he had received information for the past year and against whom he had testified four or five months earlier, had in his possession a quantity of stolen property for which he had traded heroin, which narcotic he kept buried in his backyard, he and four other officers, several from burglary detail, went to defendant's home where they observed defendant in front of his house. Van Court walked up to him and told him "he was under arrest again for the same thing," and said "I heard that you are taking more, trading more stolen property

for junk." Then he "asked him (defendant) if it would be all right to look around," referring to the house to which defendant motioned, and specifically naming the shed and backyard. Defendant replied: "Look around and you won't find anything." The officers then proceeded to search the house, wherein Van Court found various items, including wrist watches. Thereafter he went out to the backyard and found a hole in which it appeared something recently had been buried. While checking under a board on which a washing machine rested, approximately 10 or 15 feet from Officer Ruble, the latter called his attention to a blue bottle containing 123 capsules of heroin, partially covered in a 6-inch hole. In the yard the earth was dry, there was "possibly a weed or two; no plants" but right over where the bottle had been buried was one little wilted plant.

The defense asked the officer the name of the informant, to which question the court sustained an objection and then denied a motion to strike his testimony relative to the information transmitted by the informant.

Defendant testified he was standing outside when the officers arrived. One called him by his first name and told him they were going to have to go through his house. He asked if they had a search warrant and the officer replied "No," he didn't need one. They then started searching the house and yard, which yielded the bottle in question.

It is appellant's position that if the officer's testimony relative to the information transmitted to him by the informer had been properly stricken for the court's failure to permit disclosure of his name on the authority of *Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39], there would remain in the record no showing of reasonable cause to justify the arrest and search as incident thereto.

As stated by the court in *People* v. *Burke*, 47 Cal.2d 45, at page 49 [301 P.2d 241] : " (I)t was not necessary here, however, for the People to show that the search and seizure were reasonable as incident to a proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained. It was not unreasonable for the officers, without any show of force or coercion, to call upon the suspected defendant at his home, or to ask him questions, or to accept defendant's statement, 'No, go ahead,' in answer to the inquiry, 'You don't mind then if we search your apartment do you?' "

■ The evidence before us discloses that the officers went to defendant's house, not only on information of the informant that defendant had narcotics buried in his backyard and was trading them for stolen property, but on Van Court's knowledge of defendant and his activities for a period of a year, and his experience from testifying against defendant four or five months previous, when tried as the result of an arrest by narcotics officers. It is also clear that no force or coercion was used in calling on defendant at his home. It does not appear, therefore, to have been unreasonable for Van Court to call upon defendant, ask him questions, or accept his statement they could "look around" although they would find nothing.

While defendant gave a different version of what occurred, the most his testimony created was a factual conflict which the trial court, in the discharge of its duties to weigh the evidence, decide the veracity of witnesses and determine factual disputes, impliedly resolved against him. ■ The evidence in the record before us concerning the search of defendant's house and premises amply supports any determination that defendant gave his consent thereto (*People* v. *Smith,* 141 Cal. App.2d 399 [296 P.2d 913] ; *People* v. *Hood,* 149 Cal.App.2d 836 [309 P.2d 135] ; *People* v. *Cherrie,* 162 Cal.App.2d 143 [327 P.2d 909] ), and that it was freely and voluntarily given. There is no showing in the record that any force or persuasion of any kind was used by the officers to gain defendant's consent to search house, shed and backyard. The mere fact that he was under arrest at the time, or even in handcuffs, cannot *per se* make such consent involuntary (*People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241] ; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852] ; *People* v. *White,* 159 Cal.App.2d 586 [324 P.2d 296] ; *People* v. *Guy,* 145 Cal.App.2d 481 [302 P.2d 657].

Returning briefly to *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39], in the instant case the only relevance of the testimony concerning the information provided by the informant is on the issue of probable cause to arrest defendant and search the premises. ■ However, since defendant gave his free and voluntary consent to search his house, which disclosed merchandise the officers believed to be stolen, and his backyard which revealed narcotics, it is clear that not only were the officers permitted, but it was their official duty, to take defendant into custody (Pen. Code, § 836, *People* v. *Melody,* 164 Cal.App.2d 728 [331 P.2d 72] ). ■ As applied to the evidence in the case at bar, nondisclosure of the

identity of the informant and failure to strike the evidence concerning the information given by him are harmless, and constitute no ground for reversal since there is in the record, without reference to that information, ample evidence of probable cause for defendant's arrest and subsequent commitment based upon the narcotic found on defendant's premises through a lawful search.

Appellant refers briefly to *People* v. *McShann*, 50 Cal. 2d 802 [330 P.2d 33], but has made no showing that the informant would have been a material witness on the issue of guilt. Indeed, in view of the defense that he knew nothing of the heroin found on his premises, suggesting by his testimony that his brother, then serving a state prison sentence for sale and possession of narcotics, had buried the same before his arrest; his brother's recent assertion, upon defendant's motion for a new trial, that before his arrest he buried nine bottles containing heroin on the same premises, which defendant now wishes to interpose as a defense on a new trial; to say nothing of defendant's confession that the heroin was his and it was he who buried the bottle; it would be difficult for appellant now to claim that the informant, who neither participated in the commission of the offense nor was present at the time of arrest, could have been a material witness on the issue of guilt. Nor is there any showing in the record that defendant planned or wanted to call the informant as a witness, tried or was unable to locate him, or in what manner he could or would have testified on the issue of guilt. On this issue, we do not perceive how the failure to divulge the identity of the informant could have been prejudicial to defendant. (*People* v. *Lazzara*, 131 Cal.App.2d 663 [281 P.2d 4].)

Concerning appellant's second point that the evidence was insufficient to sustain the judgment of conviction, in accord with recognized rules on appeal, we are bound to view the evidence in the light most favorable to respondent, as we must assume in favor of the conviction every fact which the trial court could reasonably have deduced from the evidence and refrain from drawing contrary inferences. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

In the house in which defendant resided with his wife, mother and children, Van Court found various articles of merchandise, and in his backyard, partially covered by dirt in a 6-inch hole, a blue bottle containing 123 capsules, some of which were later examined and found to contain heroin. When confronted with ''his stash,'' defendant denied he knew

anything about it. Later, the same day, at the office of the Valley Detective Division, his entire conversation with Van Court and Sergeants Mullens and Ruble was tape recorded, during which he confessed the heroin found in the bottle belonged to him and was what remained of a purchase of 200 capsules from a peddler in Monte Villa one week before, which he buried in his backyard.

The defendant, on the other hand, testified that Van Court took him out into the yard where he was asked about the bottle. He replied he knew nothing about it and denied several times it belonged to him. The officers then took him and his wife to the station. There defendant was questioned by the officers and asked whose ''stuff'' it was. He replied he did not know, but after a couple hours' conversation, he confessed the heroin was his, which was not true, because he sought to protect his wife, mother and children. He testified he had never before seen the bottle and that his brother who had previously lived on the premises had been arrested and convicted for the sale and possession of narcotics and was serving time in the state prison therefor.

Defendant's wife testified she was pregnant at the time and was arrested for placing something in her brassiere, kept in the police car two and one-half hours while the officers made several investigations, taken to the station, searched and later released. Defendant's sister testified defendant's mother was not very well and had been in a state hospital.

Adhering to the rule that it is not the function of this court to reweigh the evidence, but to view it most favorably to respondent (*People* v. *Daugherty*, 40 Cal.2d 876 [256 P.2d 911]), we are satisfied that there is more than ample substantial evidence to support the judgment of conviction. As to the elements of the offense, Officer Carter testified the substance contained in 20 of the 123 capsules found in the bottle was heroin. The circumstances under which Van Court found the bottle disclose a deliberate concealment in the earth. That the house and yard in which the bottle was found buried were under his dominion and control, and that he occupied the premises as head of the household, is borne out by defendant's testimony that he was residing on the premises when arrested, and had been living there for about two years with his wife, mother and two children. As to defendant's knowledge of the presence of the narcotics on the premises, although defendant originally denied knowledge of the contraband, he later confessed to officers it belonged to him.

Defendant did not deny having made the statements constituting the confession, as they were fully recorded and the tape played to the court, but claimed that they were not true, he having been coerced into making them. He claims that his mother was ill, recently released from Camarillo, that his pregnant wife was arrested and held in custody at the station; that he continuously denied knowledge of the narcotics, but upon arrival at the station was told the heroin belonged to someone and, unless he confessed, his mother would be taken into custody, his wife held and his children committed to the juvenile authorities; and that several hours after his confession his wife was released. Appellant argues his statements were not his voluntary acts, but were induced by the coercive tactics of law enforcement officers.

Concerning the detention of defendant's wife, Van Court testified one of the officers saw her place something in her brassiere and she was taken to the station to be searched. As to the confession, Van Court on direct examination testified that defendant freely and voluntarily gave the statements; on *voir dire*, before the confession was admitted into evidence, that neither he nor Sergeants Ruble, Mullens, nor anyone else in his presence, told defendant that his wife would be held and his mother arrested; and that he neither had nor heard any conversation concerning defendant's wife or mother at the station. Before the tape recording was played, Van Court again on *voir dire* testified that all three officers were present at the station with the defendant; that prior to the time the recording was started neither he, nor anyone else to his knowledge, had any conversation with defendant concerning his wife, mother or children; and that the entire conversation at the police station between defendant and the officers was on the tape.

Whether a confession is free and voluntary is a preliminary question addressed to the trial court. (*People* v. *Miller*, 135 Cal. 69 [67 P. 12]; *People* v. *Siemsen*, 153 Cal. 387 [95 P. 863]). Here it appears to involve merely a factual conflict. The trial court, after weighing the evidence, determining the credibility of the witnesses and listening to the entire conversation on the tape, resolved the conflict against defendant and impliedly found that no coercive tactics were used to induce defendant to confess, and that his confession was freely and voluntarily given. Defendant's explanation as to the reason he made the statement was obviously rejected by it. Since the evidence was in conflict,

the resolution of the dispute contrary to defendant's story is not subject to attack on appeal. (*People* v. *Tokich,* 127 Cal.App.2d 639 [274 P.2d 226].)

Appellant's last contention relates to the denial of defendant's motion for new trial, which motion was based primarily upon newly discovered evidence.

▆▆ "The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court (*People* v. *Beard,* 46 Cal.2d 278, 282 [294 P.2d 29].) ▆▆ It is also well settled that such motions are looked upon with disfavor (*People* v. *Yeager,* 194 Cal. 452, 491 [229 P. 40]; *People* v. *Mandell,* 48 Cal. App.2d 806, 818 [120 P.2d 921]) and that an appellate court will not interfere except upon a clear showing of an abuse of discretion by the trial court. (Citations.)" *People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427].)

Section 1181, subdivision 8, Penal Code, provides that the court may grant a new trial upon defendant's application "(W)hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. . . ." ▆▆ Citing *People* v. *McGarry,* 42 Cal.2d 429 [267 P.2d 254], and *People* v. *Sutton,* 73 Cal. 243 [15 P. 86], the court in *People* v. *Beard,* 46 Cal.2d 278, at page 281 [294 P.2d 29], pointed out that it must appear "1. That the evidence, and not merely its materiality be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits."

▆▆ In support of the motion, defendant's brother testized that on January 19, 1956, he was convicted of selling heroin; he had resided on defendant's premises and prior to his arrest had buried thereon nine various colored bottles of heroin capsules; he was released from prison April 25, 1958, and did not arrive home until the afternoon defendant's trial commenced; he did not tell defendant about the bottles until after the trial because he was afraid he would "get violated" as he had to go before his parole officer; after his release, he went to the premises and destroyed the bottles but found only three out of the nine.

It appears unlikely that this is the kind of "newly dis-

covered" evidence contemplated under section 1181, Penal Code, for at the trial, in support of his defense that he knew nothing about the bottle, defendant testified that his brother had lived on the premises previous to the latter's arrest for the sale of narcotics and was at Chino. Obviously he intended the inference that the heroin in question was his brother's, and that the latter buried the bottle without defendant's knowledge. Accordingly, there would be nothing "newly discovered" about it. At the trial, the court either rejected the intended inference that the heroin belonged to defendant's brother who buried the bottle, or concluded that if his brother had buried it defendant knew of the fact. Also, defendant made no showing why, since he sought to use the inference as part of his defense, he had not attempted to obtain his brother's testimony for the trial.

In exercising its discretion, the court was not bound to accept the testimony of the brother as true even though it may have been uncontradicted (*People* v. *Bobeda*, 143 Cal. App.2d 496 [300 P.2d 97]). Besides the brother's testimony, the court also had before it defendant's own confession that he had buried the bottle and the heroin was his, the preliminary transcript, all of the additional testimony taken at the trial, the brother's conviction of a felony, the consideration of any bias that might arise out of the "brother relationship," and the obvious fact the brother could not be prejudiced by admitting ownership of the narcotics even though they may not belong to him. Whatever factors the trial court considered, it is clear it was not impressed with the brother's testimony.

Even if the trial judge believed it, the question of whether it was the same heroin and whether defendant knew his brother buried it would still be at issue. Also the brother's testimony discloses that he buried nine bottles and remembered where he buried them, yet when paroled, he was able to find but three. In addition, the fact that the brother buried bottles in the backyard would not preclude a finding that defendant who lived there found them and appropriated them as his own, even though he may have left them in their place of concealment; or that they were buried with defendant's knowledge; or that he, too, buried bottles of his own on the premises, either before or after his brother's arrest. We are satisfied that it would be highly improbable that a different result would be rendered upon a retrial of the cause. We find

no abuse of the trial court's discretion in denying the motion for new trial.

For the foregoing reasons, the judgment and order and each of them is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied March 24, 1959, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1959. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.