191 Cal.App.2d 783 (1961)
THE PEOPLE, Respondent,
v.
FRANK MICA SANCHEZ, Appellant.
Crim. No. 7315. 
California Court of Appeals. Second Dist., Div. One. 
May 4, 1961.
 Frank Mica Sanchez, in pro. per., for Appellant.
 Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Felice R. Cutler, Deputy Attorney General, for Respondent.
 LILLIE, J.
 The trial court found defendant guilty of possession of heroin. The following facts appear from the testimony of James J. Barry, a state narcotic agent: Around 6:45 p. m. Agent Barry, his partner and Sergeant Caskey of the Los Angeles Police Department, Bureau of Narcotics, were conducting a narcotic investigation on the premises of a hotel located at 92 North Broadway, Los Angeles. They were on the second floor in the office of the manager when they saw defendant, whom Agent Barry knew by description and nickname, and another person walking along the landing carrying groceries. As the officers emerged from the office they confronted the two and identified themselves; Agent Barry asked defendant his name; he did not ask him to stop but defendant did so. He said his name was Frank Sanchez, known as "Kiko," and answered a series of questions asked by Agent Barry--whether he had ever been arrested, to which he replied, "Yes," for "narcotics," if he was using narcotics, to which he said, "Yes," and if he had any on his person, to which defendant answered, "No." Then Agent Barry asked defendant "if he minded if he searched his person"; defendant stated, "No," whereupon the agent put his hand in defendant's trouser pocket and felt some balloons; he said to defendant, "Before I remove my hand, how many are there?"; defendant answered, "About five or six"; the agent took therefrom six balloons containing heroin. He also searched defendant's other front pocket and removed a brown bag; defendant said, "That is just milk sugar," but upon opening the bag he found two cigarette packages containing heroin; he questioned defendant about them and asked him if there were about 2 ounces there and he said, "Yes." At that time he told defendant, "You understand that you are now under arrest"; he replied, "Yes, I do." Agent Barry then asked *786 him if he had anything further in his room; defendant replied, "No, that is all there is. You can go ahead and search the room if you want." They all went up to room 23; defendant turned the key over to the agent who opened the door. A search disclosed narcotic paraphernalia--measuring spoons and two hypodermic outfits--and a white paper packet containing heroin. When asked about the bindle, defendant said, "I'd forgotten about that."
 In his defense defendant testified very briefly; he said he had been arrested in the lobby and at that time the officer put his hand in his pocket and took out something, but before doing so he did not ask his permission; he denied the officer asked him if he was using narcotics and if he minded being searched.
 [1] Appellant, appearing herein in propria persona, raises a variety of points all directed to his main contention that the evidence was not admissible against him because it was obtained as the result of an unreasonable search, to which he had given no consent; the officers had no arrest or search warrant and there was no probable cause for his arrest.
 Defendant denied under oath that Agent Barry asked permission to search his person before he put his hand in his pocket, the agent testified he asked permission to search him and that the defendant gave it before he did so; defendant asserts he was arrested in the lobby of the hotel and at that time the officer searched him, Agent Barry testified he confronted him on the landing of the second floor, searched him pursuant to his consent and then placed him under arrest; defendant denied the officer questioned him concerning his use of narcotics, the agent said he questioned him about this and other matters before requesting permission to search him. While it is true certain conflicts appear in the testimony, we are required on appeal to view the whole evidence in the light most favorable to the adjudication of guilt (People v. Lindley, 26 Cal.2d 780 [161 P.2d 227]; People v. Thomas, 25 Cal.2d 880 [156 P.2d 7]; People v. Daugherty, 40 Cal.2d 876 [256 P.2d 911]; People v. Crooker, 47 Cal.2d 348 [303 P.2d 753]), and viewing it in such light, we are satisfied there is ample evidence to support the conclusion of the trial court.
 On the factual issue of whether defendant was arrested before his person was searched the trial judge determined the same adversely to the defendant, accepting the agent's version of what occurred--that after he found the heroin in his pocket he then placed defendant under arrest for its possession. *787 [2a] In connection with appellant's claim that the officers had no right to stop and question him in the hotel since they did not see him "do anything that was ... illegal at that time," and having done so it constituted an arrest without probable cause, it is undisputed that defendant was not asked by the officers to stop, but that when they identified themselves and defendant was asked his name he stopped, stood on the landing and talked to them. The investigation being conducted by the officers on the premises of the hotel at that time was a narcotics investigation; inasmuch as Agent Barry was a narcotics officer it is obvious that he knew defendant in connection with narcotic activities for he knew his description and nickname; and that, having been in the office of the manager and having seen defendant walking along the landing of the second floor of the hotel with his arms full of groceries, the agent knew defendant lived in the hotel; and further, it is apparent that defendant was suspect. [3] It is not improper for officers, during the course of an investigation, to stop a suspect, seek an interview with him and interrogate him, wherever he may be found--at his home (People v. Michael, 45 Cal.2d 751 [290 P.2d 852]; People v. Burke, 47 Cal.2d 45 [301 P.2d 241]; People v. Jaurequi, 142 Cal.App.2d 555 [298 P.2d 896]), place of employment (People v. Zavaleta, 182 Cal.App.2d 422 [6 Cal.Rptr. 166]) or in his automobile (People v. Davis, 188 Cal.App.2d 718 [10 Cal.Rptr. 610]; People v. One 1958 Chevrolet, 179 Cal.App.2d 604 [4 Cal.Rptr. 128]; People v. King, 175 Cal.App.2d 386 [346 P.2d 235]), where circumstances warrant such action.
 [2b] In People v. Burke, 47 Cal.2d 45 [301 P.2d 241], the officers went to defendant's apartment to make a narcotics investigation (p. 48); they identified themselves and were admitted to the apartment by defendant; they asked him a series of questions--his name, if he had been previously arrested for narcotics, and if he had any narcotics in the apartment; to the latter query defendant responded, "No," the officer said, "You don't mind then if we search your apartment do you?" and defendant answered, "No, go ahead"; and they searched the apartment, found marijuana and then arrested defendant. The facts are substantially the same as those at bar; the same position here advanced was there urged and rejected by the Supreme Court. In both cases officers were making a narcotic investigation on the premises about which they as narcotic officers had prior knowledge; in the course of their investigation they came upon defendant who was suspect and whom *788 they knew by name; and the questions they put to him, in each instance, were almost identical, after which they discovered the contraband and arrested him. Concerning their interrogation of defendant the court said at page 49: "It was not unreasonable for the officers, without any show of force or coercion, to call upon the suspected defendant at his home, or to ask him questions, or to accept defendant's statement, 'No, go ahead,' in answer to the inquiry, 'You don't mind then if we search your apartment do you?' " And the fact that a police officer stops a person and talks to him and asks him some reasonable questions under the circumstances does not mean that the person so stopped is under arrest. (People v. King, 175 Cal.App.2d 386 [346 P.2d 235]; People v. Michael, 45 Cal.2d 751 [290 P.2d 852]; People v. Hood, 149 Cal.App.2d 836 [309 P.2d 135]; People v. Martin, 45 Cal.2d 755 [290 P.2d 855].) We find nothing unreasonable about the officers' investigation of the hotel premises; their confrontation of defendant who lived thereon in the course of their investigation; their interrogation of him, or the kind of questions asked; and conclude that the circumstances clearly warranted the conduct of the officers in stopping and interrogating defendant before his arrest.
 Whether, before putting his hand in defendant's pocket Agent Barry asked him if he minded if he searched his person, and defendant replied thereto, "No" is, of course, a factual issue for the determination of the lower court. (People v. Gorg, 45 Cal.2d 776 [291 P.2d 469]; People v. Michael, 45 Cal.2d 751 [290 P.2d 852]; People v. Fischer, 49 Cal.2d 442 [317 P.2d 967].) [4] Having shown that defendant freely consented to the search of his person and his room, which disclosed the evidence defendant claims was illegally obtained, and the trier of fact having accepted the agent's testimony as true, it was not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest. (People v. White, 159 Cal.App.2d 586, 592 [324 P.2d 296]; People v. Burke, 47 Cal.2d 45 [301 P.2d 241].) [5] It is the rule that where one freely consents to a search of his person or to a search of premises under his control, his constitutional rights are not violated and any search made pursuant to such consent is not unreasonable. (People v. Michael, 45 Cal.2d 751, 753 [290 P.2d 852]; People v. Gorg, 45 Cal.2d 776 [291 P.2d 469]; People v. Melody, 164 Cal.App.2d 728 [331 P.2d 72]; People v. Rodriguez, 168 Cal.App.2d 452 [336 P.2d 266]; People v. Zavaleta, 182 Cal.App.2d 422 [6 Cal. *789 Rptr. 166].) [6] Any suggestion that defendant had no choice but to stop and answer the agent's questions because the latter was a law enforcement officer is of little merit because, "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all of the circumstances." (People v. Michael, 45 Cal.2d 751, 753 [290 P.2d 852].) The trial court found defendant's consent was freely and voluntarily given and in the absence of any showing of force or persuasion of any kind used by the officers to obtain defendant's permission to search (People v. Rodriguez, 168 Cal.App.2d 452 [336 P.2d 266]), we concur with its conclusion; and "[u]nder the circumstances here, as under those in People v. Michael (1955), 45 Cal.2d 751, 754 [290 P.2d 852], a holding that as a matter of law defendant acted because of an unlawful assertion of authority by officers would be unjustified. (See also People v. Martin (1955), 45 Cal.2d 755, 761 [290 P.2d 855].)" (People v. Burke, 47 Cal.2d 45, 49 [301 P.2d 241].)
 [7] Any argument that the consent to search his room was involuntary because he was then under arrest, is not sound in the face of established authority that the fact that defendant was under arrest cannot per se make his consent involuntary (People v. Fischer, 49 Cal.2d 442 [317 P.2d 967]; People v. White, 159 Cal.App.2d 586 [324 P.2d 296]; People v. Guy, 145 Cal.App.2d 481 [302 P.2d 657]; People v. Rodriguez, 168 Cal.App.2d 452 [336 P.2d 266]); and for the further reason that defendant at that time had been properly arrested for having heroin in his possession (Health & Saf. Code, 11500) and his consent to a search of the premises under his control was not necessary inasmuch as the search was incident to a lawful arrest.
 [8] Appellant's argument that his consent was established by inadmissible hearsay (consisting of the agent's testimony--that he asked defendant if he minded being searched, that defendant stated, "No," and that defendant told him that he could "go ahead and search the room" if he wanted to)--reveals a misconception of the hearsay rule. As statements of the accused, they were clearly admissible against him, even though made out of court; also, defendant was present in court and could testify in explanation or contradiction thereof. (Code of Civ. Proc., 1870; Pen. Code, 1102.) Further, inasmuch as the fact that the words of consent were spoken by the accused was the very fact in issue, the words were *790 clearly admissible, not as hearsay, but as original evidence. (People v. MacEwing, 155 Cal.App.2d 117 [317 P.2d 82].) [9] Appellant's main complaint in this connection seems to be that the officer's testimony must be corroborated in the face of his (defendant's) denial he spoke any words of consent. Such testimony requires no corroboration, and the trier of fact, if he believes it, may accept it as the truth. The trial court did so, rejecting as without credibility the defendant's version of what occurred. [10] In any event, appellant has waived his right to raise the hearsay issue on this appeal for his failure to interpose his objection to the admission of the agent's testimony relating to defendant's conversation with him in the trial court.
 [11] Out of Agent Barry's testimony that he asked defendant "if he was using narcotics" and defendant's answer, "Yes," appellant has raised for the first time, in this proceeding, the objection that he was using narcotics at the time he gave his consent and thus it was not voluntary. The record before us does not support any such issue for there is no evidence of any kind that at the time defendant spoke the words of consent he was either under the influence of narcotics or even then using them. Agent Barry testified that he made no close check to detect if there was anything about the appearance of the defendant that in any way indicated to him that at the time defendant was under the influence of narcotics, that the lighting was not good. Defendant offered no evidence that he was then under the influence of narcotics or that he was then using them; in fact he denied under oath that the agent even asked him if he was using narcotics. Further, defendant himself developed the evidence from which it is clear that he was not even using narcotics at the time of his conversation with the agent; defense counsel elicited from Agent Barry on cross-examination the testimony that other than defendant's affirmative answers to his questions "if he was using narcotics," he "had nothing to indicate" that defendant was "then presently using narcotics." And finally, even if the evidence supported a finding that defendant was under the influence of a narcotic, that fact alone would not per se render his statements inadmissible. (People v. Russo, 168 Cal.App.2d 747 [336 P.2d 628].)
 For the foregoing reasons the judgment is affirmed.
 Wood, P. J., and Fourt, J., concurred.